## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>FTX TRADING LTD., *et al.*,[1]<br><div align="right">Debtors.</div> | Chapter 11<br>Case No. 22-11068 (JTD)<br>(Jointly Administered) |
| FTX TRADING LTD., ISLAND BAY<br>VENTURES INC. and CLIFTON BAY<br>INVESTMENTS LLC f/k/a ALAMEDA<br>RESEARCH VENTURES LLC,<br><div align="right">Plaintiffs,</div><br>- against –<br><br>SKYBRIDGE CAPITAL II, LLC, SKYBRIDGE<br>GP HOLDINGS LLC, DIGITAL MACRO<br>FUND LP f/k/a SKYBRIDGE COIN FUND LP,<br>SALT VENTURE GROUP LLC, ANTHONY<br>SCARAMUCCI, and BRETT MESSING,<br><div align="right">Defendants.</div> | Adv. Pro. No. 24-50209 (JTD) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL ARBITRATION AND TO DISMISS AND/OR STAY

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ..................................................................................................8

ARGUMENT ......................................................................................................................15

I.    THE COURT SHOULD COMPEL ARBITRATION OF CLAIMS RELATING TO
THE SKYBRIDGE ACQUISITION AND SALT SPONSORSHIP (COUNTS 5-9,
12-13) AND STAY THE REMAINING CLAIMS (COUNTS 1-4, 10-11).....................16

    A.    Plaintiffs' Claims Relating to the SkyBridge Acquisition and the SALT
Sponsor Agreement Are Subject to Arbitration Agreements. ...............................17

    B.    The Remaining Claims (Counts 1-4, 10-11) Should be Stayed Pending
Arbitration..............................................................................................................19

II.    REGARDLESS OF ITS RULING REGARDING ARBITRATION, THIS COURT
DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE STATE-
LAW CLAIMS (COUNTS 7-9) ...................................................................................21

III.    PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE CLAIM FOR BREACH OF THE
SKYBRIDGE II LLCA (COUNT 7) .............................................................................23

    A.    The Complaint Fails to Identify a Specific Contract Obligation That
Scaramucci and/or Messing Breached ...................................................................24

    B.    Scaramucci and Messing are Exculpated From Liability Under the
SkyBridge II LLCA ...............................................................................................25

    C.    The Complaint Fails to Plausibly Plead Damages for Breach of the
SkyBridge II LLCA ...............................................................................................27

IV.    PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE BREACH OF FIDUCIARY
DUTY CLAIM (COUNT 8) ..........................................................................................27

    A.    The Breach of Fiduciary Duty Claim Is Derivative and Must Be Dismissed
Because Plaintiffs Failed to Plead Demand Futility or File a Verified
Complaint................................................................................................................28

    B.    Plaintiffs Fail to Plausibility Plead Any Breach of Fiduciary Duty by
Messing or Scaramucci ..........................................................................................30

        1.    The Complaint Fails to Plausibly Plead Any Breach of Fiduciary Duty
With Respect to Compensation Decisions..................................................31

        2.    The Complaint Fails to Plausibly Plead Any Breach of Fiduciary Duty
With Respect to the Sale of Cryptocurrency ..............................................32

V.    PLAINTIFFS FAIL TO PLAUSIBLY PLEAD AIDING AND ABETTING
BREACH OF FIDUCIARY DUTY (COUNT 9).............................................................33

    A.    Plaintiffs Fail to Allege Bankman-Fried Owed Island Bay Any Fiduciary
Duties .....................................................................................................................34

B. Plaintiffs Fail to Allege That Scaramucci and Messing Knowingly Participated Any Breach ...................................................................35

VI. PLAINTIFFS FAIL TO PLAUSIBLY PLEAD CONSTRUCTIVE FRAUDULENT TRANSFER (COUNTS 3-4) ...........................................................38

A. The Complaint Fails to Adequately Allege No Reasonably Equivalent Value for the SkyBridge Transactions ...............................................38

1. Plaintiffs Do Not Adequately Plead a Lack of Reasonably Equivalent Value for the SkyBridge Acquisition .......................................39

2. Plaintiffs Fail to Adequately Plead No Reasonably Equivalent Value for the SALT Sponsorship or SCF Investment ...........................41

B. Plaintiffs Fail to Plead Insolvency with Respect to the Specific Transferors or the FTX Enterprise as a Whole .......................................................42

1. Plaintiffs Fail to Plead Insolvency with Respect to the Specific Transferors .........................................................................43

2. Plaintiffs Fail to Plead Insolvency With Respect to the FTX Enterprise as a Whole .............................................................44

VII. PLAINTIFFS FAIL TO PLAUSIBLY PLEAD ACTUAL FRAUDULENT TRANSFER (COUNTS 1-2). .........................................................45

A. The Complaint Contains No Direct Evidence of Fraud With Respect to the SkyBridge Transactions ...............................................................46

B. The Badges of Actual Fraud, Which Are Needed To Plead Circumstantial Evidence, Are Not Met for the SkyBridge Transactions ...........................49

1. The Relationship Between Plaintiffs and the SkyBridge Transferees .......49

2. The Consideration for the SkyBridge Transactions Was Fair ..................50

3. The Plaintiffs Were Not Insolvent at the Time of the SkyBridge Transactions .........................................................................50

4. The SkyBridge Transfers Are a Small Portion of the Debtors' Estate ......51

5. Plaintiffs Did Not Retain Control or Dominion Over the Funds Transferred .........................................................................51

6. None of the SkyBridge Transactions, Nor Bankman-Fried's Relationship With Skybridge, Were Concealed ......................................51

VIII. PLAINTIFFS FAIL TO PLAUSIBLY PLEAD UNJUST ENRICHMENT (COUNTS 5-6). ..............................................................................................52

IX. PLAINTIFFS' PROPERTY RECOVERY AND DISALLOWANCE CLAIMS SHOULD BE DISMISSED BECAUSE THERE ARE NO AVOIDABLE TRANSFERS (COUNTS 10-12) ...................................................................55

CONCLUSION ..............................................................................................56

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*77 Charters, Inc. v. Gould*,
    2020 WL 2520272 (Del. Ch. May 18, 2020) ............................................................36

*ADA v. Cigna Corp.*,
    *605 F. 1283* (11th Cir. 2010) ......................................................................................15

*Akins v. Cobb*,
    2001 WL 1360038 (Del. Ch. Nov. 1, 2001)................................................................28

*Alameda Rsch. Ltd. v. Giles*,
    2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024)....................................16, 43, 44, 46, 47, 48

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
    545 A.2d 1171 (Del. 1988) ..........................................................................................35

*Apotex, Inc. v. Senju Pharm. Co.*,
    921 F. Supp. 2d 308 (D. Del. 2013) .............................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................15, 45

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................15

*Bessette v. AVCO Financial Services Inc.*,
    230 F.3d 439 (1st Cir. 2000) ........................................................................................53

*CIM Urban Lending GP, LLC v. Cantor Commer. Real Estate Sponsor, L.P.*,
    2016 WL 768904 (Del. Ch. Feb. 26, 2016) .................................................................32

*Clifford Paper, Inc. v. WPP Inv'rs, LLC*,
    2021 WL 2211694 (Del. Ch. June 1, 2021) .................................................................28

*Clouser v. Marie*,
    2022 WL 453551 (Super. Ct. Feb. 14, 2022)...............................................................27

*Contemporary Indus. Corp. v. Frost*,
    564 F.3d 981 (8th Cir. 2009)........................................................................................53

*Dietrichson v. Knott*,
    2017 WL 1400552 (Del. Ch. Apr. 19, 2017) ...............................................................28

*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin*
*Intermediates, S.A.S.*,
    197 F.R.D. 112 (D. Del. 2000) ................................................................19

*Enzolytics, Inc. v. Empire Stock Transfer Inc.*,
    2023 WL 2543952 (Del. Ch. Mar. 16, 2023) ...........................................53

*Equity Tr. Co. v. Interactive Brokers LLC*,
    2018 WL 1216082 (Super. Ct. Mar. 6, 2018) ...........................................23

*Erisman v. Zaitsev*,
    2021 WL 6134034 (Del. Ch. Dec. 29, 2021) ............................................31

*Feldman v. AS Roma SPV GP, LLC*,
    2021 WL 3087042 (Del. Ch. July 22, 2021) .............................................30

*Feldman v. Cutaia*,
    951 A.2d 727 (Del. 2008) .........................................................................28

*Fletcher Int'l, Ltd. v. ION Geophysical Corp.*,
    2010 WL 2173838 (Del. Ch. May 28, 2010) ............................................33

*Garthon Bus. Inc. v. Stein*,
    30 N.Y.3d 943 (N.Y. 2017) .......................................................................18

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000) ...................................................................................16

*Hamilton Partners, Ltd. P'ship v. Englard*,
    11 A.3d 1180 (Del. Ch. 2010) ..................................................................34

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989) ...................................................................16

*In Gov't Emps. Ins. Co. v. Elkholy*,
    2024 WL 5202550 (D.N.J. Dec. 23, 2024) ..............................................19

*In re Allegheny Health, Educ. & Rsch. Found.*,
    253 B.R. 157 (Bankr. W.D. Pa. 2000) ......................................................55

*In re AmCad Holdings, LLC*,
    2016 WL 3412289 (Bankr. D. Del. June 14, 2016) .............................21, 22

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ...................................................................15

*In re BWI Liquidating Corp.*,
    437 B.R. 160 (Bankr. D. Del. 2010) ....................................................21, 22

*In re Continental Airlines*,
  203 F.3d 203 (3d Cir. 2000) ................................................................52

*In re Cred Inc.*,
  650 B.R. 803 (Bankr. D. Del. 2023) ...........................................15, 45

*In re DBSI, Inc.*,
  447 B.R. 243 (Bankr. D. Del. 2011) ...........................................43, 44

*In re EXDS, Inc.*,
  316 B.R. 817 (Bankr. D. Del. 2004) .....................................18, 19, 20

*In re Fleming Cos*.,
  325 B.R. 687 (Bankr. D. Del. 2005) ....................................................19

*In re F-Squared Inv. Mgmt., LLC*,
  633 B.R. 663 (Bankr. D. Del. 2021) ....................................................38

*In re Garden Ridge Corp.*,
  338 B.R. 627 (Bankr. D. Del. 2006) ....................................................43

*In re Hagerstown Fiber Ltd. P'ship*,
  277 B.R. 181 (Bankr. S.D.N.Y. 2002) .........................................19, 20

*In re Hechinger Inv. Co. of Del., Inc.*,
  274 B.R. 71 (D. Del. 2002) .................................................................53

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ....................................................53

*In re Insilco Techs., Inc.*,
  330 B.R. 512 (Bankr. D. Del. 2005) ....................................................23

*In re Integrated Health Servs.*,
  303 B.R. 577 (Bankr. D. Del. 2003) ....................................................53

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 808 (Del. Ch. 2005) .....................................................28, 29

*In re Joubert*,
  411 F.3d 452 (3d Cir. 2005) .................................................................52

*In re KB Toys Inc.*,
  736 F.3d 247 (3d. Cir. 2013) ...............................................................55

*In re Kinder Morgan, Inc. Corp. Reorg. Litig.*,
  2015 WL 4975270 (Del. Ch. Aug. 20, 2015) .....................................25

*In re Lear Corp. S'holder Litig.*,
    967 A.2d 640 (Del. Ch. 2008)............................................................55

*In re Live Well Fin., Inc.*,
    2023 WL 3995900 (Bankr. D. Del. June 13, 2023) ..................................46

*In re Majestic Star Casino, LLC*,
    716 F.3d 736 (3d Cir. 2013)..............................................................55

*In re Mindbody, Inc., Stockholder Litig.*,
    2024 WL 4926910 (Del. 2024)......................................................passim

*In re Mintze*,
    434 F.3d 222 (3d Cir. 2006)..............................................................19

*In re Olympus Healthcare Grp., Inc.*,
    352 B.R. 603 (Bankr. D. Del. 2006) ....................................................18

*In re Our Alchemy, LLC*,
    2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019) ................................45

*In re P3 Health Grp. Holdings, LLC*,
    2022 WL 16548567 (Del. Ch. Oct. 31, 2022)....................................24, 25

*In re Pennysaver USA Publ'g, LLC*,
    587 B.R. 445 (Bankr. D. Del. 2018) ....................................................49

*In re Plassein Int'l Corp.*,
    428 B.R. 64 (D. Del. 2010)................................................................41

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004)..........................................................21, 23

*In re Sharp Intern. Corp.*,
    403 F.3d 43 (2nd Cir. 2005)..............................................................48

*In re SportCo Holdings, Inc.*,
    2021 WL 4823513 (Bankr. D. Del. Oct. 14, 2021)..................................45

*In re Sunset Aviation, Inc.*,
    468 B.R. 641 (Bankr. D. Del.) ......................................................43, 55

*In re USDigital, Inc.*,
    443 B.R. 22 (D. Del. Bankr. 2011) ......................................................42

*In re Vaso Active Pharms., Inc.*,
    2012 WL 4793241 (Bankr. D. Del. Oct. 9, 2012)................................49, 50

*In re Wash. Mut., Inc.*,
2012 WL 4755209 (Bankr. D. Del. Oct. 4, 2012)....................................................22

*In re Winstar Communs., Inc.*,
335 B.R. 556 (Bankr. D. Del. 2005) ....................................................................18

*Ironworkers Dist. Council v. Andreotti*,
2015 WL 2270673 (Del. Ch. May 8, 2015) ............................................................26

*Jacobs v. Akademos, Inc.*,
326 A.3d 711 (Del. Ch. 2024)............................................................................30

*Jacobs v. Meghji*,
2020 WL 5951410 (Del. Ch. Oct. 8, 2020).........................................35, 36, 52, 54

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) ..................................................................................18

*Malone v. Brincat*,
1997 WL 697940 (Del. Ch. Oct. 30, 1997)............................................................34

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ...............................................................................37

*Maric Healthcare, LLC v. Guerrero*,
2024 WL 2993336 (Del. Ch. June 14, 2024) ..........................................................30

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..........................................................................................16

*Nelson v. Emerson*,
2008 WL 1961150 (Del. Ch. May 6, 2008) ............................................................31

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ..........................................................................32, 52

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993)............................................................................15

*Pinkney v. Meadville*,
2022 WL 1616972 (3d Cir. May 23, 2022) ............................................................15

*Quadrant Structured Prods. Co. v. Vertin*,
102 A.3d 155 (Del. Ch. 2014)............................................................................35

*Reklam v. Viacom, Inc.*,
2017 WL 726660 (D. Del. Feb. 23, 2017) .............................................................30

*Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*,
  2015 WL 394011 (Del. Ch. Jan. 29, 2015) ......................................................32, 33

*Ryan v. Buckeye Partners, L.P.*,
  2022 WL 389827 (Del. Ch. Feb. 9, 2022) ...............................................................34

*Seville Indus. Mach. Corp.* v. *Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984).....................................................................................45

*Smachlo v. Birkelo*,
  576 F. Supp. 1439 (D. Del. 1983) ............................................................................29

*Stone & Paper Inv'r, LLC v. Blanch*,
  2019 WL 2374005 (Del. Ch. May 31, 2019) ...........................................................28

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) ......................................................................................28

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
  140 F.3d 478 (3d Cir. 1998).....................................................................................15

*United Food & Commer. Workers Union v. Zuckerberg*,
  262 A.3d 1034 (Del. 2021) ......................................................................................30

*VFB LLC v. Campbell Soup Co.*,
  482 F.3d 624 (3d Cir. 2007).....................................................................................38

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  901 A.2d 106 (Del. 2006) ........................................................................................24

*White v. Panic*,
  783 A.2d 543 (Del. 2001) ........................................................................................32

*Whyte v. Barclays Bank PLC*,
  494 B.R. 196 (S.D.N.Y. 2013)..................................................................................53

**Statutes**

10 U.S.C. § 105(a) ...............................................................................................*passim*

11 U.S. Code § 101(31) ...............................................................................................50

11 U.S.C. § 544(b) ..............................................................................................38, 45

11 U.S.C.§ 548(a)(1)(A).............................................................................................45

11 U.S.C. § 548(a)(1)(B)......................................................................................38, 42

11 U.S.C.§ 550(a)(1) ..................................................................................................55

6 Del. C. § 1304(a)(1) ........................................................................................................45

6 Del. C. § 1304(a)(2) ........................................................................................................38

6 Del. C. § 1305 .................................................................................................................38

6 Del. C. § 18-1001 ...........................................................................................................28

6 Del. C. § 18-1003 ...........................................................................................................29

9 U.S.C. § 3 .......................................................................................................................16

Fed. R. Bank. P. 7012(b) ...................................................................................................15

Fed. R. Civ. P. 12(b)(1) .....................................................................................................21

Fed. R. Civ. P. 12(b)(6) .....................................................................................................15

Fed. R. Civ. P. 23.1(b)(3) ..................................................................................................29

Defendants SkyBridge Capital II, LLC ("SkyBridge II"), SkyBridge GP Holdings LLC ("SkyBridge GP" and collectively with SkyBridge II, "SkyBridge"), Digital Macro Fund LP f/k/a SkyBridge Coin Fund LP ("SCF"), SALT Venture Group LLC ("SALT"), Anthony Scaramucci, and Brett Messing (collectively, "Defendants") file this memorandum of law in support of their *Motion to Compel Arbitration and To Dismiss and/or Stay* (the "Motion") all claims asserted in the Complaint, filed on November 8, 2024 (the "Complaint") by FTX Trading Ltd. ("FTX Trading"), Island Bay Ventures Inc. ("Island Bay"), and Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC ("Clifton Bay" and, together with FTX Trading and Island Bay, "Plaintiffs" and each, a "Plaintiff").

## INTRODUCTION

SkyBridge is a multi-billion-dollar hedge fund manager with dozens of outside, sophisticated investors and a successful track record of investing in both traditional and alternative assets. In 2022, Plaintiffs and Defendants (who are not FTX Insiders) entered into three transactions (the "SkyBridge Transactions"), each of which was negotiated at arm's length and consistent with FTX's legitimate business enterprises at the time and none of which were concealed.[2] Plaintiffs now seek to unwind and assert meritless claims concerning these SkyBridge Transactions based on fraud committed by the FTX Insiders against FTX's creditors, including Defendants.

That the FTX Insiders—including Sam Bankman-Fried—committed fraud is deeply unfortunate, but, like so many others, Defendants were victims of that fraud, and the SkyBridge Transactions had no role in perpetuating it. Defendants – along with customers, the media,

---

[2] Capitalized terms used, but not otherwise defined, herein are as defined in the Complaint or the *Declaration of Jonathan Youngwood in Support of Defendants' Motion to Compel Arbitration and To Dismiss and/or Stay*, filed contemporaneously herewith. Defendants do not waive and reserve all rights to challenge the accuracy of the Complaint's defined terms.

celebrities, politicians, family, and friends – trusted Bankman-Fried and had no knowledge of the unlawful and secretive events inside FTX.  Rather than acknowledge this, Plaintiffs marshalled their significant resources to bring baseless claims against Defendants, possibly in hopes that public disparagement would intimidate Defendants into a quick settlement.  It will not.

At the heart of the Complaint is a flimsy narrative laced with personal and professional attacks against Defendants.  Plaintiffs allege that Bankman-Fried gifted Defendants tens of millions of dollars through the SkyBridge Transactions as a pathway for accessing Anthony Scaramucci's connections in the worlds of business, politics, and media.  But beneath the rhetoric, the Complaint cannot overcome the glaring reality that the three SkyBridge Transactions—the SALT Sponsorship, SCF Investment, and SkyBridge Acquisition—were all on their face legitimate business transactions with non-insiders structured to mutually benefit the parties on their own terms.

In January 2022, Plaintiff FTX Trading executed the SALT Sponsor Agreement, pursuant to which FTX Trading agreed to pay $12 million—the market rate at the time—to sponsor numerous conferences and other programs organized by SALT over a three-year period.  In doing so, FTX Trading joined many of its peers to present and advertise at one of the preeminent global conferences for asset managers and technology entrepreneurs. The Complaint does not allege that FTX Trading did not get exactly what it bargained for or that the SALT Sponsor Agreement imposed off-market or onerous terms on FTX Trading.

In March 2022, Plaintiff Clifton Bay, consistent with its business focus, invested $10 million in SCF, which is a fund that invests in cryptocurrency assets.  In exchange, Clifton Bay received $10 million worth of limited partner interests in SCF redeemable per the SCF's continuing offering terms which, on information and belief, Clifton Bay continues to hold.  The

Complaint includes zero allegations regarding the value (or purported lack thereof) of the SCF Investment.

In September 2022, Plaintiff Island Bay invested $45 million in exchange for a 30% stake in the operating companies for Scaramucci's multi-billion-dollar hedge fund, SkyBridge II and SkyBridge GP.  The SkyBridge Acquisition—which included a $45 million liquidation preference backstopped by $40 million of cryptocurrency as well as other rights and protections—was structured to ensure Island Bay received at least equivalent value while preserving substantial upside potential.  Island Bay's investment proved profitable:  SkyBridge's revenues have almost doubled from 2023 to 2024 and $20 million in cryptocurrency that SkyBridge purchased in connection with Island Bay's investment is now worth approximately $154 million.  Based solely on SkyBridge's cryptocurrency holdings (and putting aside the value associated with SkyBridge's operating business), Plaintiffs' equity interest is worth at least what they paid for it.[3]

The Complaint twists these transactions to concoct a story of a nefarious quid pro quo between Bankman-Fried and Scaramucci.  But conspicuously missing from the Complaint is any direct evidence that Plaintiffs entered into these transactions so that Bankman-Fried could hinder, delay, or defraud FTX's creditors, which is a glaring omission considering the unprecedented investigations and testimony in this case and the related criminal proceedings.  Nor can Plaintiffs identify meaningful "badges of fraud" to show fraudulent intent – the transactions were not between insiders, were for value, did not render Plaintiffs insolvent, were not secretive and Plaintiffs did not retain dominion or control over the transferred money.  Plaintiffs also add a litany

---

[3] Indeed, it seems that Plaintiffs would be better off by monetizing their stake in SkyBridge rather than pursuing this resource-intensive and wasteful clawback action.

of state law claims, but each of those fails at the pleading stage on procedural and substantive grounds.

Simply put, the Complaint does not and cannot support these claims as a matter of well-pled fact or, importantly for this motion, as a matter of law. Plaintiffs' claims should be dismissed for the following reasons.

*First*, Counts 5-9 and 12-13 (unjust enrichment, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and objections to Defendants' proofs of claim) are subject to mandatory arbitration and cannot be adjudicated by this Court.[4] The non-arbitrable claims (Counts 1-4, 10-11), which arise from the same transactions and have similar factual underpinnings, should also be stayed pending arbitration.

*Second*, this Court lacks subject-matter jurisdiction over the "non-core" state-law claims (Counts 6-9) against Defendants Scaramucci and Messing, which do not have a sufficiently close nexus to the confirmed FTX Plan (as defined below) or the bankruptcy proceeding.

*Third*, even if the Court had subject matter jurisdiction, Plaintiffs' attempt to assert breach of contract claims (Count 7) premised on Scaramucci and Messing purportedly causing SkyBridge II to sell certain cryptocurrency tokens fails as a matter of law. Plaintiffs do not (and cannot) identify any specific contractual obligation Scaramucci and Messing breached with respect to the sale of tokens and, even if their actions could constitute a breach, they would be exculpated from any liability under the SkyBridge II LLCA. Moreover, Plaintiffs fail to adequately plead damages from the sale of the now near-worthless FTT and Serum coins.

---

[4] Defendants move to dismiss Counts 5-9 and 12-13 as subject to mandatory arbitration and contest this Court's jurisdiction to dismiss such claims on any other grounds. Defendants raise additional defenses to Counts 5-9 in this Motion in an abundance of caution, but do not waive and expressly reserve their arbitration rights with respect to such claims.

*Fourth*, the breach of fiduciary duty claims (Count 8) are derivative (belonging to SkyBridge, not Plaintiffs) and barred because Plaintiffs failed to verify the Complaint and do not attempt to assert demand futility.  Even if the breach of fiduciary duty claims were procedurally proper, they are substantively flawed because the Complaint contains only conclusory assertions to support any cognizable breach of fiduciary duty with respect to Scaramucci and Messing's alleged compensation decisions and/or purported sale of cryptocurrency.

*Fifth*, the aiding and abetting claim (Count 9) against Scaramucci and Messing fails because Plaintiffs do not adequately allege the existence of an underlying fiduciary duty, nor do they satisfy the high bar to adequately plead both *knowledge* of and *participation* in the underlying alleged breach.

*Sixth*, Plaintiffs' failure to plausibly allege either insolvency or a lack of reasonably equivalent value for the SkyBridge Transactions is fatal to their constructive fraudulent conveyance claims (Counts 3-4).  The Complaint relies solely on the insolvency of non-Plaintiff Alameda Research Ltd., not the specific transferor-Plaintiffs identified in the Complaint or the FTX enterprise as a whole.  The Complaint fails to cite *any* facts to support a conclusion that the SALT Sponsorship and the SCF Investment were not for equivalent value.  Moreover, the threadbare assertions supporting lack of reasonable equivalent value of the SkyBridge Acquisition ignore the plain terms of the governing instruments, which incorporated key features that maximized recovery – and value – for Island Bay.

*Seventh*, the Complaint fails to plausibly plead that Plaintiffs *actually intended* to defraud their creditors by entering into the SkyBridge Transactions—a required showing for actual fraudulent transfer (Counts 1-2).  The Complaint confirms that the SkyBridge Transactions were arm's length agreements with non-FTX Insiders, publicly disclosed, intended to generate

legitimate business returns, and that provided (and continue to provide) Plaintiffs and their creditors substantial value.  Attempting to skirt this reality, Plaintiffs overload the Complaint with facts about general fraud and mismanagement wholly unrelated to the SkyBridge Transactions.

*Eighth*, Plaintiffs' equitable claims for unjust enrichment (Counts 5-6) fail both procedurally and substantively.  Plaintiffs' strained attempt to assert an unjust enrichment claim under 11 U.S.C. § 105(a), which creates no standalone right of action for unjust enrichment, fails as a matter of law.  Plaintiffs' unjust enrichment claims are also deficient because, as the Complaint acknowledges, the SkyBridge Transactions are governed by express written contracts and the Complaint fails to adequately plead that Plaintiffs were impoverished by the transactions or that they lacked any justification.

*Finally*, Plaintiffs' claims for property recovery under § 550(a) of the Bankruptcy Code and disallowance under § 502(d) of the Bankruptcy Code must be dismissed because Plaintiffs failed to adequately plead that the SkyBridge Transactions may be avoided.

Accordingly, the grounds on which Defendants move to dismiss and/or stay are as follows:

| CLAIM | DEFENDANTS | GROUNDS FOR RELIEF |
|---|---|---|
| **Counts 1-2: Actual Fraudulent Transfer** | SkyBridge II; SkyBridge GP; SCF; SALT | • Overlapping issues with arbitration justify a stay.<br>• Failure to plausibly plead that Plaintiffs actually intended to defraud its creditors. |
| **Counts 3-4: Constructive Fraudulent Transfer** | SkyBridge II; SkyBridge GP; SCF; SALT | • Overlapping issues with arbitration justify a stay.<br>• Failure to plausibly plead no reasonably equivalent value for the transfers.<br>• Failure to plausibly plead insolvency. |
| **Count 5: Unjust Enrichment 11 U.S.C. § 105(a)** | SkyBridge II; SkyBridge GP; SCF; SALT | • Subject to mandatory arbitration.<br>• No independent right of action for unjust enrichment under § 105(a).<br>• Failure to plausibly plead no adequate remedy at law.<br>• Failure to plausibly plead that Plaintiffs were impoverished.<br>• Failure to plausibly plead an absence of justification for the transactions. |

| CLAIM | DEFENDANTS | GROUNDS FOR RELIEF |
|---|---|---|
| **Count 6:**<br>**Unjust Enrichment**<br>**Delaware Law** | SkyBridge II | • Subject to mandatory arbitration.<br>• Failure to plausibly plead no adequate remedy at law.<br>• Fails to plausibly plead that Plaintiffs were impoverished.<br>• Failure to plausibly plead an absence of justification for token sale. |
| **Count 7:**<br>**Breach of Contract** | Scaramucci; Messing | • Subject to mandatory arbitration.<br>• No subject matter jurisdiction.<br>• Failure to plausibly plead breach of any contractual obligation.<br>• Defendants are exculpated from liability.<br>• Failure to plausibly plead damages. |
| **Count 8:**<br>**Breach of Fiduciary**<br>**Duty** | Scaramucci; Messing | • Subject to mandatory arbitration.<br>• No subject matter jurisdiction.<br>• Failure to plead demand futility and file verified complaint for derivative claims.<br>• Barred as duplicative of breach of contract.<br>• Failure to plausibly plead breach of fiduciary duty.<br>• Defendants are exculpated from liability. |
| **Count 9:**<br>**Aiding and Abetting**<br>**Breach of Fiduciary**<br>**Duty** | Scaramucci; Messing | • Subject to mandatory arbitration.<br>• No subject matter jurisdiction.<br>• Failure to plausibly plead that Bankman-Fried owed a fiduciary duty to Island Bay.<br>• Failure to plausibly plead knowing participation in any breach of fiduciary duty. |
| **Counts 10-11:**<br>**Disallowance of**<br>**Claims & Property**<br>**Recovery** | SkyBridge II;<br>SkyBridge GP; SCF;<br>SALT; Scaramucci;<br>Messing | • Overlapping issues with arbitration justify a stay.<br>• Failure to plausibly plead any transfers are avoidable or recoverable. |
| **Count 12-13:**<br>**Objections to Proofs**<br>**of Claim** | SkyBridge II;<br>SkyBridge GP; SALT | • Subject to mandatory arbitration. |

## STATEMENT OF FACTS[5]

SkyBridge II and SkyBridge GP are investment advisors for the SkyBridge hedge funds, which manage over $2 billion in assets. Compl. ¶¶ 13-14, 59, 62. SkyBridge generates revenue primarily from its work as a registered investment advisor with over $20 million in revenue for 2023. *Id.* ¶ 105. Scaramucci has historically "managed SkyBridge to great success." *Id.* ¶ 59. Both SkyBridge entities are managed by a four-person board of managers, including Defendants Scaramucci and Messing, and two other managers. *Id.* ¶ 82.

Scaramucci and Bankman-Fried were introduced via email in March 2021. *Id.* ¶ 63. Shortly thereafter, FTX Trading agreed to sponsor a SALT conference hosted by SkyBridge and Scaramucci for leaders in technology and finance to present on cutting-edge issues. *Id.* ¶¶ 10, 63, 65. SALT conferences have been described as highly-prominent Wall Street gatherings with sold-out crowds of fund managers and investors "hungry for in-person interactions."[6] FTX Trading operated a digital asset trading platform and exchange. Decl. John J. Ray III, D.I. 24, ¶ 33. Following the first SALT conference FTX Trading sponsored, in January 2022, FTX Trading agreed to pay a total of $12 million to sponsor twelve additional SALT conferences and/or programs pursuant to the terms of the SALT Sponsor Agreement. *See id.* ¶¶ 10, 65; *see also* Ex. A, SALT Sponsor Agreement (cited in Compl. ¶ 4).[7] Among other terms, FTX Trading agreed to

---

[5] For purposes of this Motion only, the facts as alleged in the Complaint are taken as true. Nothing in this Motion should be interpreted as conceding the accuracy of any of the Complaint's allegations.

[6] Merced, M.J.D.L. (2017) *Trump Aide Scaramucci Sells Investment Business to Chinese Consortium*, *The New York Times*, https://www.nytimes.com/2017/01/17/business/dealbook/trump-aide-scaramucci-sells-investment-business-to-chinese-consortium.html (last accessed Jan. 20, 2025); Herbst-Bayliss, S. (2021) *Flagship Wall St Conference Sees Record Attendance, Run on Steak*, https://www.reuters.com/business/finance/flagship-wall-st-conference-sees-record-attendance-run-steak-2021-09-15/ (last accessed Jan. 20, 2025).

[7] References to Exs. A-H herein refer to the exhibits to the *Declaration of Jonathan Youngwood in Support of Defendants' Motion to Compel Arbitration*, filed contemporaneously herewith.

resolve any controversies relating to the SALT Sponsorship by arbitration before the American Arbitration Association. *See* Ex. A, SALT Sponsor Agreement § 11. FTX has only paid $2 million of the agreed $12 million. *See* Compl. ¶ 10 n.5.

In March 2022, Scaramucci inquired with certain Debtor employees (not FTX Insiders) regarding a potential investment in the SkyBridge-managed coin fund, SCF, which focuses on trading cryptocurrency assets. *Id.* ¶ 67. Clifton Bay made regular investments across a variety of asset categories, including cryptocurrency and cryptocurrency-related assets, and the SCF Investment was accordingly an ordinary course-of-business transaction for the company. *See* Decl. John J. Ray III, D.I. 24, ¶¶ 27, 30; Global Notes, D.I. 2300, at 39-47; Global Notes, D.I. 2301, at 51-56. Following internal discussions with little or no involvement from FTX Insiders, Clifton Bay approved and consummated a $10 million investment. *See* Compl. ¶ 11. According to the Complaint, Bankman-Fried did not propose, negotiate, structure or execute the SCF Investment on behalf of Clifton Bay and his alleged involvement was limited to giving final approval after another non-FTX Insider recommended the investment. *See* Compl. ¶¶ 67-68; Ex. B, SCF Subscription Booklet, March 2022 Subscription Booklet at 50 (executed by Amy Wu as Clifton Bay's authorized signatory). The Complaint does not include any facts quantifying the value (or purported lack thereof) of the SCF Investment at the time of the transaction or today.

Later in 2022, SkyBridge negotiated with several parties, including Bankman-Fried, while exploring a potential sale of 15% of the equity interests in SkyBridge. During these negotiations, Bankman-Fried proposed and insisted on doubling any investment in SkyBridge from 15% to 30%. Alexandra Semenova, *"I Think We'll Be Right": Scaramucci Dishes on SkyBridge Deal with FTX Inked During Andrea Bocelli Concert in Italy*, YAHOO FINANCE (Sept. 15, 2022),

https://finance.yahoo.com/news/scaramucci-skybridge-ftx-investment-124735255.html (cited in Compl. ¶ 13 n.7).

On September 7, 2022, SkyBridge and Clifton Bay executed a series of contracts—(1) the Subscription Agreement, dated September 7, 2022, by and among SkyBridge Capital II, LLC, SkyBridge GP Holdings, LLC, and Island Bay Ventures, Inc. (the "Subscription Agreement"), (2) the SkyBridge II LLCA, and (3) the SkyBridge GP LLCA (such LLCAs together, the "SkyBridge LLCAs")—pursuant to which Clifton Bay paid $45 million to purchase a 30% membership interest in SkyBridge II and SkyBridge GP.  Compl. ¶¶ 73, 78; Ex. C, Subscription Agreement (cited in Compl., *see e.g.*, ¶ 73); Ex. D, SkyBridge II LLCA (cited in Compl., *see e.g.*, ¶ 74); Ex. E, SkyBridge GP LLCA (cited in Compl., *see e.g.*, ¶ 74).  Shortly thereafter, a Debtor employee requested that Clifton Bay be replaced with Island Bay for purposes of the SkyBridge Acquisition and Island Bay replaced Clifton Bay post-closing as party to the three agreements. *See* Compl. ¶ 78.  In entering into the Subscription Agreement, Island Bay represented and warranted to SkyBridge that, among other things, Island Bay's ██████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████  Ex. C, Subscription Agreement § 3.1(d).

As a condition to the SkyBridge Acquisition, Plaintiffs required SkyBridge II to invest $40 million of the purchase price[8] received from Clifton Bay into certain cryptocurrency to hold on its

---

[8] $20 million of the purchase price for the SkyBridge Acquisition was returned to Plaintiffs' affiliate, Alameda TR Systems S.de R. L., because the FTT and SRM tokens were purchased from such affiliate. Ex. H, Token Purchase Agreement.  Based on the substantive consolidation as determined by this Court, Plaintiffs effectively paid only $25 million for the SkyBridge Acquisition.

balance sheet. *Id.* ¶ 75. Specifically, SkyBridge II invested $10 million into each of Bitcoin,

Solana, FTT (FTX's native cryptocurrency token), and Serum (together, the "Purchased

Cryptocurrency"). *Id.* The remaining $5 million was used for SkyBridge's working capital

purposes. *Id.* The SkyBridge LLCAs each grant Island Bay a number of unique rights not given

to other SkyBridge members, including:

- A $45 million liquidation preference (equal to Island Bay's purchase price), whereby if SkyBridge is sold, acquired or liquidated, Island Bay is entitled to acquire at least the first $45 million of proceeds ahead of the other members. Ex. D, SkyBridge II LLCA § 5.09(c)(i); Ex. E, SkyBridge GP LLCA § 5.09(c)(i).

- The right to veto any sale, transfer, assignment, pledge, mortgage, or other disposition of the Purchased Cryptocurrency. Ex. D, SkyBridge II LLCA § 3.11(c).

- The option to purchase at least an additional 55% of the equity interest (for a total of at least 85%) in SkyBridge. Ex. D, SkyBridge II LLCA § 6.10; Ex. E, SkyBridge GP LLCA § 6.10.

- A non-compete applicable to Scaramucci and Messing in the event the option to purchase SkyBridge was exercised. Ex. D, SkyBridge II LLCA § 6.10(g).

- The right to veto the sale or issue of any SkyBridge interest that would dilute Island Bay's own membership interest. Ex. D, SkyBridge II LLCA § 6.12; Ex. E, SkyBridge GP LLCA § 6.12.

- Immunity from removal as a member of SkyBridge in the event Island Bay enters bankruptcy proceedings. Ex D, SkyBridge II LLCA § 7.02; Ex. E, SkyBridge GP LLCA § 7.02.

- Additional consent rights not available to the other members. *See* Ex. D, SkyBridge II LLCA § 10.06; Ex. E, SkyBridge GP LLCA § 10.06.

The SkyBridge LLCAs also incorporated other rights and protections in favor of each member,

including Island Bay, such as tag-along rights, preemptive rights, and consent rights over certain

amendments. *See* Ex. D, SkyBridge II LLCA §§ 6.08, 6.09, 10.08(a)(iii); Ex. E, SkyBridge GP

LLCA §§ 6.08, 6.09, 10.08(a)(iii). These features call into question Plaintiffs' allegation that the

SkyBridge Acquisition included "highly unfavorable terms." Compl. ¶ 72.

In addition, Island Bay expressly agreed to resolve disputes concerning the SkyBridge Acquisition in arbitration before the International Centre for Dispute Resolution.  *See* Ex. D, SkyBridge II LLCA § 10.09(b); Ex. C, Subscription Agreement § 4.6; Ex. E, SkyBridge GP LLCA § 10.09(b).  Plaintiffs admit that disputes relating to the SkyBridge Acquisition are "clearly governed by contract" (*i.e.*, the SkyBridge LLCAs).  *See* Compl. ¶ 168.

On November 11, 2022, Alameda Research LLC, Alameda Research Ltd., and other entities affiliated with FTX filed a chapter 11 action for relief in this Court.  *See In re FTX Trading Ltd., et al.*, Case No. 22-11068 (JTD) (Bankr. D. Del.).  Certain other FTX entities were solvent when the FTX bankruptcy was filed.  *See* Decl. John J. Ray III, D.I. 24 ¶¶ 13-16.  To the public's surprise (and unbeknownst to SkyBridge, Scaramucci, and Messing), Bankman-Fried and other FTX Insiders were subsequently charged with a multi-billion-dollar fraudulent scheme, primarily related to the misappropriation of customer funds between Alameda Research Ltd. and FTX Trading.  *See* First Interim Report of John J. Ray, D.I. 1242-1 at 1.  Bankman-Fried and the FTX Insiders were later found guilty of defrauding customers, lenders, and investors.  Compl. ¶ 50.  None of Defendants were accused of any wrongdoing in the criminal proceedings.

After the FTX bankruptcy filing, the already-declining value of FTX Tokens ("FTT") and Serum ("SRM") began to plummet.[9]  To mitigate losses, SkyBridge sought to sell its FTT and SRM token holdings to salvage some value in those assets before they became worthless.  Consistent with SkyBridge II LLCA's terms, SkyBridge repeatedly requested Island Bay's consent

---

[9]   FTX Token USD (FTT-USD) Stock Historical Prices & Data, Yahoo Finance, https://finance.yahoo.com/quote/FTT-USD/history/ (last accessed Jan. 20, 2025) (listing a closing price of $1.836 for FTT on November 15, 2022 as compared to $26.0459 on September 8, 2022); Serum USD (SRM-USD) Price History & Historical Data, Yahoo Finance, https://finance.yahoo.com/quote/SRM-USD/history/ (last accessed Jan. 20, 2025) (listing a closing price of $0.288 for Serum on November 15, 2022 as compared to $0.82694 on September 8, 2022).

to liquidate the FTT and SRM holdings, but Island Bay never responded to those requests. Compl. ¶ 100. In December 2022, after providing Island Bay advance notice by multiple letters, SkyBridge sold the FTT and SRM tokens for proceeds of approximately $3 million. *See id*. By the Debtors' own estimates and the public market price, SkyBridge's FTT tokens, if not sold, would be worth nothing today and SkyBridge's SRM tokens would only be worth around $220,000.[10] Accordingly, by selling the FTT and SRM tokens in December 2022, SkyBridge and its investors avoided a near-total loss on the FTT and SRM holdings.

Following the sale, SkyBridge notified Island Bay of the of FTT and SRM token sale and further informed Island Bay that SkyBridge II continues to hold the Bitcoin and Solana tokens.[11] The current market value of SkyBridge II's Bitcoin and Solana holdings is approximately $154 million.[12]

On June 27, 2023, SkyBridge filed proofs of claims in the FTX bankruptcy with respect to the SALT Sponsorship and SkyBridge Acquisition. Compl. ¶ 21. In its proof of claim relating to the SkyBridge Acquisition, SkyBridge asserts prepetition unliquidated claims seeking at least $45

---

[10] *See* Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets, D.I. 7090 at 13 (valuing FTT at zero); Memorandum Opinion and Order Regarding Estimation of Digital Asset Claims, D.I. 19069 at 22 (estimating the value of SRM tokens by applying a 18.6% discount to market value); Serum USD (SRM-USD) Price, Value, News & History, Yahoo Finance, https://finance.yahoo.com/quote/SRM-USD/ (last accessed Jan 23, 2025) (listing the market price of SRM at $0.0219 as of close of market on January 23, 2025 compared to $0.826294 as of close of market on September 8, 2022).

[11] Defendants informed Plaintiffs' counsel that the Complaint's allegations regarding SkyBridge II's purported sale of Bitcoin and Solana tokens were demonstrably false and requested that such allegations be removed from the Complaint. Plaintiffs have not denied that these allegations are false, nor have they amended their Compliant to remove the allegations.

[12] Compl. ¶¶ 18, 75 (noting that SkyBridge purchased approximately 515 BTC and 398,868 SOL in September 2022); Bitcoin USD (BTC-USD) Stock Price, News, Quote & History, Yahoo Finance, https://finance.yahoo.com/quote/BTC-USD/ (last accessed Jan. 23, 2025); (listing market price of BTC at $103,925.56 as of close of market on January 23, 2025); Solana USD (SOL-USD) Stock Price, News, Quote & History, Yahoo Finance, https://finance.yahoo.com/quote/SOL-USD/ (last accessed Jan. 23, 2025) (listing market price of SOL at $253.46 as of close of market on January 23, 2025).

million from Island Bay and its affiliated Debtors as damages for fraudulent misrepresentation, fraudulent concealment, fraudulent inducement, and breach of contract, among others claims.  Ex. F, SkyBridge Proof of Claim (cited in Compl., *see* ¶ 21).  Following Debtors' rejection of the SALT Sponsor Agreement, SkyBridge filed a proof of claim seeking unliquidated contract rejection damages of at least $8 million to recover for SALT's programming fees, among other losses.  Ex. G, SALT Proof of Claim (cited in Compl., *see* ¶ 21).

On June 27, 2024, Plaintiffs filed a Disclosure Statement estimating creditor recoveries between $14.7–$16.5 billion.  Disclosure Statement, D.I. 19143 at 23.  Since that estimate, the price of Bitcoin has increased approximately 68% based on the public market price.  Bitcoin USD (BTC-USD) Stock Price, News, Quote & History, Yahoo Finance, https://finance.yahoo.com/quote/BTC-USD/ (last accessed Jan. 23, 2025) (listing a closing price of $61,604 on June 27, 2024, and $103,960.17 on January 23, 2025).

On October 8, 2024, the Court confirmed the Second Amended Joint Chapter 11 Plan of Reorganization (the "FTX Plan") and the FTX Plan went effective on January 3, 2025.  Confirmation Order, D.I. 26404; Notice of Effective Date, D.I. 29127.

**ARGUMENT**

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), Plaintiffs must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[13]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.  When considering a Rule 12(b)(6) motion, the court accepts "as true all of the facts alleged in the complaint, and draw[s] all reasonable inferences in the plaintiff's favor." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  However, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *In re Cred Inc.*, 650 B.R. 803, 813 (Bankr. D. Del. 2023) (quoting *ADA v. Cigna Corp.* 605 F.1283, 1290 (11th Cir. 2010)).

In a motion to dismiss, "[c]ourts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Pinkney v. Meadville*, 2022 WL 1616972, at *2 (3d Cir. May 23, 2022) (cleaned up); *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Even if the complaint does not explicitly cite or refer to a document, the court may consider the document if the claims in the complaint are based on that document.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d, at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (holding

---

[13] Rule 12 is made applicable to this adversary proceeding by Bankruptcy Rule 7012(b).  Fed. R. Bank. P. 7012(b) ("R. Civ. P. 12(b)–(i) applies in an adversary proceeding.")

the court may consider a purchase and sale agreement at issue in the complaint but not cited or attached to it).  In the bankruptcy context, courts may take notice of documents on the docket's record such as reports of the trustee or officers of the debtors.  *See, e.g.*, *Alameda Rsch. Ltd. v. Giles*, 2024 WL 4562675, at *6, n.24 (Bankr. D. Del. Oct. 23, 2024) (taking judicial notice of Second Interim Report of John J. Ray III to the Independent Directors: The Commingling and Misuse of Customer Deposits at FTX.com).[14]

## I.  THE COURT SHOULD COMPEL ARBITRATION OF CLAIMS RELATING TO THE SKYBRIDGE ACQUISITION AND SALT SPONSORSHIP (COUNTS 5-9, 12-13) AND STAY THE REMAINING CLAIMS (COUNTS 1-4, 10-11)

The Federal Arbitration Act ("FAA") provides that if any suit is brought "upon any issue referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  In enacting the FAA, Congress declared "a liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22.  In keeping with the policy favoring arbitration, the party seeking to avoid arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).  Further, the Bankruptcy Code gives little, if any, discretion to bankruptcy courts to deny arbitration when a non-core matter is involved. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156-57 (3d Cir. 1989).

---

[14] The Court may appropriately consider the following documents Defendants cite in support of this Motion: (1) documents cited in the Complaint; (2) the governing contracts for the SkyBridge Transactions; (3) filings in the FTX bankruptcy proceedings; (4) market values of cryptocurrency, and; (5) publicly available news articles.

A.    **Plaintiffs' Claims Relating to the SkyBridge Acquisition and the SALT Sponsor Agreement Are Subject to Arbitration Agreements.**

The SkyBridge LLCAs, Subscription Agreement, and SALT Sponsor Agreements each contain arbitration provisions, which broadly require arbitration of claims related to such agreements, subject to their terms.  Section 10.09(b) of the SkyBridge LLCAs and Section 4.6 of the Subscription Agreement include identical arbitration provisions, which state:



Ex. D, SkyBridge II LLCA § 10.09(b); Ex. E, SkyBridge GP LLCA § 10.09(b); Ex. C, Subscription Agreement § 4.6.   The arbitration provision in Section 11 of the SALT Sponsor Agreement provides:

> *Any controversy or claim* between the parties hereto *arising out of or related to* the provisions of *this Agreement* or the breach thereof, *shall be settled by arbitration* by one arbitrator in New York, in accordance with the Rules of the American Arbitration Association ("AAA")[.]

Ex. A, SALT Sponsor Agreement § 11.   By their plain terms, the arbitration agreements require that claims relating to the SkyBridge Acquisition and SALT Sponsorship be arbitrated in two separate proceedings, before different arbitral bodies, and subject to different rules.

Because both agreements incorporate the rules of arbitral bodies, the arbitrator, not any court, should determine whether the dispute is arbitrable—*i.e.*, whether a particular dispute is within the scope of the parties' arbitration agreement or clause and therefore is subject to

arbitration.[15]  *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (adopting the majority view that where the arbitration clause provides that arbitration will be conducted in accordance the rules of the AAA, "that statement constitutes clear and unmistakable evidence of the parties' intent to have an arbitrator determine substantive arbitrability"); *Garthon Bus. Inc. v. Stein*, 30 N.Y.3d 943, 944 (N.Y. 2017) (because an agreement incorporated a specific body's arbitration rules "the issue of whether the dispute is arbitrable should be resolved by the arbitrator").

Plaintiffs' claims relating to the SkyBridge Acquisition and SALT Sponsorship are subject to mandatory arbitration in the first instance, without any determination by this Court as to the claims' arbitrability.  This includes Counts 5-9 (unjust enrichment, breach of contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty) and Counts 12-13 (objections to Defendants' proofs of claim, which raise fraudulent misrepresentation, fraudulent inducement, negligent representation, breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, civil conspiracy, and rejection damages) in the Complaint.  Under the FAA, this Court has no discretion to deny the motion to compel arbitration with respect to such claims.  *See In re Mintze*, 434 F.3d 222, 231-32 (3d Cir. 2006) (bankruptcy courts lack discretion to deny arbitration of non-bankruptcy claims because there is no "inherent conflict" with the Bankruptcy Code); *In re EXDS, Inc.*, 316 B.R. 817, 826 (Bankr. D. Del. 2004) (enforcing alternative dispute resolution of breach of fiduciary duty claims); *In re Winstar Communs., Inc.*, 335 B.R. 556, 569 (Bankr. D. Del. 2005) (ordering arbitration of unjust enrichment claims); *In re Olympus Healthcare Grp., Inc.*, 352 B.R. 603, 611-12 (Bankr. D. Del. 2006) (ordering arbitration of breach

---

[15] The SkyBridge LLCAs, and Subscription Agreement are governed by Delaware law.  Ex. D, SkyBridge II LLCA § 10.09(a); Ex. E, SkyBridge GP LLCA § 10.09(a); Ex. C, Subscription Agreement § 4.5.  The SALT Sponsor Agreement is governed by New York law.  Ex. A, SALT Sponsor Agreement § 11.

of contract claims).  Consequently, the Court must dismiss Counts 5-9 and 12-13 of the Complaint and compel arbitration of these claims.

### B.      The Remaining Claims (Counts 1-4, 10-11) Should be Stayed Pending Arbitration

Courts have discretion to stay a proceeding pending a decision in arbitration.  *See E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 128 (D. Del. 2000).  A stay may be appropriate where resolution of the other proceeding would potentially simplify the issues in litigation.  *See Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013).  This may include situations where arbitrable claims have some factual and/or substantive overlap in issues with non-arbitrable claims.  *See In re Fleming Cos.*, 325 B.R. 687, 695 (Bankr. D. Del. 2005) (ordering a stay of non-arbitrable claims arising under the Bankruptcy Code because the success of those claims depended on the success of the arbitrable fraud and contract claims); *In Gov't Emps. Ins. Co. v. Elkholy*, 2024 WL 5202550, at *6 (D.N.J. Dec. 23, 2024) (staying non-arbitrable claims where the arbitration proceedings would adjudicate the same substantive issues underpinning the non-arbitrable claims).

In *In re EXDS, Inc.*, for example, the court ordered a stay of fraudulent transfer claims where arbitrable negligence, negligent misrepresentation, breach of contract, breach of fiduciary duty, and unjust enrichment claims arose from the same transaction.  316 B.R. at 826.  Granting the stay, the court held that the factual underpinnings of the fraudulent transfers claims were "essentially those underlying [the arbitrable claims]."  *Id*.  In doing so, the court relied on *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181 (Bankr. S.D.N.Y. 2002) as having substantially similar facts.  In *Hagerstown*, the court explained that "[t]he arbitration and the fraudulent conveyance litigation also share common questions of fact" because both the arbitrable and non-arbitrable claims would consider the fairness of the consideration in the transactions and the value

of the contracts. *See id.* at 208 (ordering a stay of fraudulent convenance claims arising from the same transactions as arbitrable claims).

The same is true here. Both the arbitrable and non-arbitrable claims arise from the same transactions, *i.e.*, the SkyBridge Acquisition and SALT Sponsor Agreement, and the merits of both the arbitrable and non-arbitrable claims will require assessing similar issues with respect to those transactions. For example, the fraudulent transfer, unjust enrichment, and aiding and abetting breach of fiduciary duty claims will all consider: (1) the relative value the parties' received in connection with those transactions; and (2) the relationships between the parties involved. *See, e.g.*, Compl. ¶ 155 (asserting that the SkyBridge Acquisition did not have "reasonably equivalent value" for aiding and abetting breach of fiduciary duty); *id.* ¶ 129 (asserting that Plaintiffs did not receive "reasonably equivalent value" for fraudulent transfer). Other common issues in the arbitrable and non-arbitrable claims include the appropriateness of compensation Scaramucci and Messing received, the scope and meaning of the governing contracts, and the state of mind of the parties involved in the transactions. *See, e.g.*, *id.* ¶ 111 (asserting "overpaying" Scaramucci and Messing contributes to the badges of fraud for fraudulent convenance); *id.* ¶ 149 (premising breach of fiduciary duty on "excessive compensation"). Such substantive overlap justifies ordering a stay with respect to the fraudulent transfer and corresponding disallowance and property recovery claims (which depend on the success of fraudulent transfer claims) because those claims arise from the same transactions as the arbitrable claims and, therefore, the "factual underpinnings" of the arbitrable and non-arbitrable claims are essentially the same. *See In re EXDS, Inc.*, 316 B.R. at 826; *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. at 208.

## II.   REGARDLESS OF ITS RULING REGARDING ARBITRATION, THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE STATE-LAW CLAIMS (COUNTS 7-9)

Plaintiffs' claims against Scaramucci and Messing under Delaware law—breach of contract (Count 7), breach of fiduciary duty (Count 8), and aiding and abetting breach of fiduciary duty (Count 9)—should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because the claims lack a sufficient close nexus to the FTX Plan and the bankruptcy proceedings for the Court to retain post-confirmation "related to" jurisdiction.

"After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164-65 (3d Cir. 2004). Post-plan confirmation, "non-core" claims that do not arise under Title 11 must have a "close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over [them]." *See id.* at 166-167; *see also In re BWI Liquidating Corp.*, 437 B.R. 160, 164 (Bankr. D. Del. 2010) (explaining that state law breach of contract claims in an adversary proceeding are non-core). Courts only find a "close nexus" where a claim will "affect an integral aspect of the bankruptcy process." *In re Resorts Int'l*, 372 F.3d at 167. Claims that merely may impact the trust's assets do not create a sufficiently close nexus for jurisdiction where such claims "will not require a court to interpret or construe the Plan." *See id.* at 170 (explaining that if potential increase in "trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant").

Bankruptcy courts only retain jurisdiction over non-core claims after plan confirmation where the bankruptcy plan "specifically describe[s]" the claim and expressly "provide[s] for the retention of such jurisdiction." *In re BWI Liquidating Corp.*, 437 B.R. at 165. The plan must describe the nature of the claim, the events giving rise to the claim or identify the defendants. *See In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2 (Bankr. D. Del. June 14, 2016). Courts

will not give effect to expansive definitions in a bankruptcy plan of "causes of action" for which bankruptcy jurisdiction is retained. *See id.*; *see also In re BWI Liquidating Corp.*, 437 B.R. at 166 (broad retention of jurisdiction "provides no evidence of sufficiently close nexus with the bankruptcy proceeding to support post-confirmation jurisdiction."). Even if a bankruptcy plan's broad definition of "causes of action" could be read as encompassing the claims at issue, the lack of specificity is "insufficient to establish a close nexus with respect to any individual claim." *In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2.

None of Plaintiffs' state-law claims against Scaramucci and Messing have a close nexus to the FTX Plan or the bankruptcy proceeding sufficient to confer jurisdiction now that the FTX Plan[16] has been confirmed.[17] That the state-law claims could potentially affect the trust's assets is insufficient to confer jurisdiction since the claims do not "affect[] the interpretation, implementation, consummation, execution, or administration of" the FTX Plan. *See In re Wash. Mut., Inc.*, 2012 WL 4755209, at *2 (Bankr. D. Del. Oct. 4, 2012). While the FTX Plan contains an exceedingly broad definition of "Causes of Action" for which the bankruptcy court retains jurisdiction, the Court should not give effect to this definition as encompassing Plaintiffs' state-law claims where the FTX Plan fails to identify Defendants, the state-law claims at issue, or the events giving rise to such claims. *See* FTX Plan §§ 2.1.27, 12(f); *In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2 (no jurisdiction where the bankruptcy plan did not specifically identify the defendants or breach of fiduciary duty claims).

---

[16] The FTX Plan was confirmed on October 8, 2024. *See* DI 26404. This adversary proceeding was brought one month later, on November 8, 2024. *See* DI 27829.

[17] While the events giving rise to the state-law claims occurred pre-petition, "the timing of the conduct alleged in the complaint is not a factor to be considered in determining whether there is a close nexus." *In re BWI Liquidating Corp.*, 437 B.R. at 165.

Beyond the overly broad definition of "Causes of Action" for retention of bankruptcy court jurisdiction, nothing in the FTX Plan or the Complaint suggests or supports that Plaintiffs' state-law claims have a "close nexus" to the FTX Plan and the bankruptcy proceeding. Consequently, the state-law claims should be dismissed for lack of subject matter jurisdiction. *See, e.g.*, *Resorts Int'l*, 372 F.3d at 171 (dismissing state-law claims for professional negligence and breach of contract); *In re Insilco Techs., Inc.*, 330 B.R. 512, 526 (Bankr. D. Del. 2005) (no jurisdiction over unjust enrichment, aiding and abetting breach of fiduciary duty, and breach of fiduciary duty claims).

## III.   PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE CLAIM FOR BREACH OF THE SKYBRIDGE II LLCA (COUNT 7)

To survive a motion to dismiss for failure to state a breach of contract claim, a plaintiff must allege (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damages." *Equity Tr. Co. v. Interactive Brokers LLC*, 2018 WL 1216082, at *3 (Super. Ct. Mar. 6, 2018).

Plaintiffs assert that Scaramucci and Messing, acting in their capacity as managers, breached the SkyBridge II LLCA by causing SkyBridge II to dispose of its FTT, Serum, Bitcoin, and Solana tokens. Compl. ¶¶ 19, 140-46. Plaintiffs fail to state a claim for breach of contract because: (1) Plaintiffs fail to identify any contract obligation that Scaramucci and Messing breached; (2) the SkyBridge II LLCA exculpates Scaramucci and Messing from liability for any purported breach; and (3) there are no damages.

### A. The Complaint Fails to Identify a Specific Contract Obligation That Scaramucci and/or Messing Breached

Plaintiffs do not (and cannot) identify a specific contract provision that Scaramucci and/or Messing breached in connection with the alleged sale of certain cryptocurrency.[18]  This deficiency is fatal to Plaintiffs' breach of contract claim.  *See, e.g.*, *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (affirming dismissal of a contract claim where the plaintiff did not identify a specific contract provision imposing an obligation on the defendant).

Plaintiffs purport to assert breach of contract claims premised on Scaramucci and Messing allegedly *causing* SkyBridge II to dispose of its holdings of the Purchased Cryptocurrency without Island Bay's consent in supposed violation of the SkyBridge II LLCA.  Compl. ¶¶ 144-45.  The Complaint fails to identify any specific contract provision that was breached.  Island Bay's consent rights with respect to disposal of the Purchased Cryptocurrency arise from Section 3.11(c) of the SkyBridge II LLCA.  Section 3.11(c) provides, ████████████████████████████

████████████████████████████████████████████████████████████

Ex. D, SkyBridge II LLCA § 3.11(c) (emphasis added).  Any purported breach of the consent requirement in Section 3.11(c) of the SkyBridge II LLCA cannot give rise to breach of contract claims against Scaramucci and/or Messing.

"A plaintiff only can assert a breach of contract claim against a party that owed the pertinent obligation under the agreement."  *In re P3 Health Grp. Holdings, LLC*, 2022 WL 16548567, at *11 (Del. Ch. Oct. 31, 2022).  In *P3 Health Grp.*, the court dismissed breach of contract claims against a member of a LLC who was party to the LLC agreement because the contractual provisions the plaintiff sought to enforce specifically imposed the obligation on the company, not

---

[18] Plaintiffs incorrectly assert that SkyBridge II disposed of the Bitcoin and Solana tokens.  *See supra* at 13 n.10.

the defendant-member.  *Id*. at *11-12.  The court concluded that "[t]he Company is the proper defendant for [plaintiff's] claims for breach of the LLC Agreement" with respect to obligations that the company owed.  *Id*. at *12.  While there were provisions of the LLC agreement that imposed obligations on members, the breach of contract claim was not premised on a breach of any of those provisions.  *Id.* at *11.  Accordingly, the court dismissed the breach of contract claims against the LLC member.  *Id*; *see also In re Kinder Morgan, Inc. Corp. Reorg. Litig.*, 2015 WL 4975270, at *5 (Del. Ch. Aug. 20, 2015) (dismissing a claim against parties to a limited partnership agreement who "did not owe the contractual obligations that the Complaint [sought] to enforce").

Plaintiffs' breach of contract claims against Scaramucci and Messing should be dismissed for the same reasons as in *P3 Health Grp*.  Namely, Plaintiffs seek to hold Scaramucci and Messing liable for a breach of ███████████████████████████████████████████ ████████████████████████ without Island Bay's prior consent.  *See* Ex. D, SkyBridge II LLCA § 3.11(c) (emphasis added); Compl. ¶¶ 144-45.  Indeed, the SkyBridge II LLCA is clear that ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ Ex. D, SkyBridge II LLCA § 2.06(b) (emphasis added).  The proper defendant with respect to any breach of Island Bay's consent rights in Section 3.11(c) of the SkyBridge II LLCA would be SkyBridge II.  *See P3 Health Grp.*, 2022 WL 16548567, at *12.  Accordingly, any alleged breach of Section 3.11(c) of the SkyBridge II LLCA cannot be brought against Scaramucci or Messing and Plaintiffs' breach of contract claims must be dismissed.  *See, e.g.*, *id.* at *11-12.

### B.    Scaramucci and Messing are Exculpated From Liability Under the SkyBridge II LLCA

Even if Plaintiffs could identify a contractual obligation that Scaramucci and Messing breached (which they cannot), Plaintiffs ignore that the SkyBridge II LLCA exculpates members

and managers from liability to any other member for █████████████████

████████████████████████████████████████████████████

Ex D, SkyBridge II LLCA § 3.08(a). Plaintiffs admit that both Scaramucci and Messing were acting as managers. Compl. ¶ 19. Plaintiffs have not pled that Scaramucci or Messing acted in bad faith or did not reasonably believe that their alleged actions with respect to the sale of the Purchased Cryptocurrency were not in the best interest of SkyBridge II.

To act in bad faith, an officer, manager, or director "must have acted with scienter, *i.e.*, with a motive to harm, or with indifference to harm that will necessarily result." *Ironworkers Dist. Council v. Andreotti*, 2015 WL 2270673, at *27 (Del. Ch. May 8, 2015). None of the allegations supporting Plaintiffs' breach of contract claims even suggest that Scaramucci or Messing acted in bad faith with respect to the alleged cryptocurrency sale.

Rather, the facts alleged in the Complaint and publicly-available information with respect to the value of the Purchased Cryptocurrency support that any actions Scaramucci and Messing took regarding the sale of FTT and SRM tokens were in good faith and in the best interest of SkyBridge II. Indeed, the value of the FTT and SRM tokens, if not sold, would have been $0 for FTT and approximately $[311,000] for SRM as of the date of this motion. *See* Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets, D.I. 7090 (valuing FTT at zero); Memorandum Opinion and Order, D.I. 19069 (estimating the value of SRM tokens by applying a 18.6% discount to market value). By selling the FTT and SRM tokens for approximately $3 million in December 2022, Compl. ¶ 100, SkyBridge II avoided a near total loss on the FTT and SRM holdings to the benefit of SkyBridge II and Island Bay as a member of the company. Accordingly, Plaintiffs fail to plead that Scaramucci and Messing should not be exculpated under

the SkyBridge II LLCA for any actions in connection with the sale of tokens and the breach of contract claims should be dismissed.

### C. The Complaint Fails to Plausibly Plead Damages for Breach of the SkyBridge II LLCA

Plaintiffs fail to plausibly plead damages for similar reasons—they do not (and cannot) allege any damages or loss resulting from the sale of FTT and SRM tokens in December 2022. *See Clouser v. Marie*, 2022 WL 453551, at \*4 (Super. Ct. Feb. 14, 2022) (breach of contract claim will fail if there are no damages).  Plaintiffs have no damages where SkyBridge II, and thereby Plaintiffs as members of SkyBridge II, would have suffered a near total loss on the FTT and SRM tokens but for the sale.  Plaintiffs cannot dispute that SkyBridge II sold the FTT and Serum tokens at a higher price than they are worth today.  Accordingly, because Plaintiffs suffered no damages, their breach of contract claim must be dismissed.

## IV. PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE BREACH OF FIDUCIARY DUTY CLAIM (COUNT 8)

Plaintiffs allege that Scaramucci and Messing breached their fiduciary duties by: (1) setting excessive compensation for themselves through an allegedly unfair compensation process; and (2) selling the Purchased Cryptocurrencies without Island Bay's consent.  Compl. ¶ 149.

Plaintiffs' breach of fiduciary duty claims should be dismissed for two reasons: (1) the breach of fiduciary duty claims are derivative, and Plaintiffs have failed to plead demand futility or file a verified complaint; and (2) Plaintiffs fail to plausibly allege any breach of fiduciary duty by Messing or Scaramucci with respect the compensation decisions or purported sale of the Purchased Cryptocurrency.

A. **The Breach of Fiduciary Duty Claim Is Derivative and Must Be Dismissed Because Plaintiffs Failed to Plead Demand Futility or File a Verified Complaint**

A defendant asserting derivative claims must bring demand on the board or plead demand futility. 6 Del. C. § 18-1001; *see also Stone & Paper Inv'r, LLC v. Blanch*, 2019 WL 2374005, at *4 (Del. Ch. May 31, 2019). Whether a claim is direct or derivative hinges on two questions: "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004); *see also Clifford Paper, Inc. v. WPP Inv'rs, LLC*, 2021 WL 2211694, at *6-7 (Del. Ch. June 1, 2021) (applying *Tooley* in the LLC context). Where all members of an entity are harmed in proportion with their ownership, the claim is derivative. *See Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). A plaintiff cannot simply "recast the alleged harm to the [c]ompany . . . as harm to him directly." *Id*.

Plaintiffs' breach of fiduciary duty claims that arise from compensation decisions by Messing and Scaramucci in their capacity as managers of SkyBridge II are derivative. *See Akins v. Cobb*, 2001 WL 1360038, at *6 (Del. Ch. Nov. 1, 2001) (claims premised on excessive compensation are "garden-variety derivative claim[s]"). Indeed, Plaintiffs allege that the "process for determining Scaramucci's and Messing's compensation [] was unfair to *SkyBridge II*" and fail to identify any non-conclusory direct harm to Plaintiffs. Compl. ¶ 149 (emphasis added). Moreover, Plaintiffs, "if they were harmed at all, were harmed indirectly and only because of their ownership in [SkyBridge]." *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 819 (Del. Ch. 2005) *aff'd*, 906 A.2d 766 (Del. 2006). That is because SkyBridge, not Plaintiffs, paid Scaramucci and Messing. Compl. ¶ 105. Any recovery relating to purportedly excessive compensation would flow to SkyBridge, not Plaintiffs, thus rendering the breach of fiduciary duty claims derivative. *See Dietrichson v. Knott*, 2017 WL 1400552, at *4-5 (Del. Ch. Apr. 19, 2017)

(claims premised on improper compensation to a LLC member and officer were derivative because the harm was to the entity, and any recovery would flow to the LLC).

Plaintiffs' derivative breach of fiduciary duty claims arising from compensation fail for two reasons: (1) Plaintiffs did not file a verified compliant as required under Rule 23.1; and (2) Plaintiffs fail to allege that they made any demand on the board or plead demand futility.

Under Rule 23.1(b), a derivative complaint "must be verified."  Fed. R. Civ. P. 23.1(b). Rule 23.1 is not just a technical requirement; it "serves the important purpose of ensuring that the plaintiff or some other person has investigated the charges and found them to have substance." *Smachlo v. Birkelo*, 576 F. Supp. 1439, 1442 (D. Del. 1983) (citations omitted).[19]  Where, as here, a plaintiff fails to file a verified complaint, the proper action is to "replead the complaint and properly verify it."  *Id.* at 1443.

The derivative breach of fiduciary duty claims should be dismissed for the independent reason that Plaintiffs failed to allege that they made any demand with respect to such claims on SkyBridge II or to plead demand futility.  Rule 23.1 requires that a plaintiff asserting a derivative claim "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . [or] the reasons for not obtaining the action or not making the effort."  Fed. Civ. P. 23.1(b)(3); *see also* 6 Del. C. § 18-1003 (establishing demand requirement for derivative action involving LLCs).  There are no allegations in the Complaint regarding any demand on SkyBridge II or supporting any purported reasons for not making a demand.  Plaintiffs do not even identify all four managers on SkyBridge's board, let alone plead

---

[19] Rule 23.1's requirement to file a verified complaint is particularly relevant here where Plaintiffs failed to exercise their right to inspect the books and records of SkyBridge II, pursuant to Section 10.01 of the SkyBridge II LLCA to confirm whether the Bitcoin and Solana tokens were sold.  *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d at 820 (admonishing plaintiffs for deficient pleadings when plaintiffs failed to utilize their right to inspect books and records).

sufficient facts for this Court to engage in the "director-by-director" analysis demand futility requires. *See United Food & Commer. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021) (explaining demand futility must be assessed as to each director); *see also* Compl. ¶ 82. Accordingly, the absence of any particularized allegations of demand futility in the Complaint mandates dismissal of the derivative breach of fiduciary duty claims. *See Reklam v. Viacom, Inc*., 2017 WL 726660, at *4 (D. Del. Feb. 23, 2017) (dismissing derivative breach of fiduciary duty claim for failure to plead demand futility).

### B.   Plaintiffs Fail to Plausibility Plead Any Breach of Fiduciary Duty by Messing or Scaramucci

To state a claim for breach of fiduciary duty, a plaintiff must plead two elements: (1) that a fiduciary duty existed; and (2) that the defendant breached that duty. *Jacobs v. Akademos, Inc.*, 326 A.3d 711 (Del. Ch. 2024).

The Complaint purports to assert claims premised on duties of good faith, fair dealing, and oversight, but such allegations are simply subsidiary of the duties of care and loyalty. *See United Food & Commer. Workers Union v. Zuckerberg*, 262 A.3d at 1049 ("The directors and officers of a Delaware corporation owe two overarching fiduciary duties—the duty of care and the duty of loyalty."). Unless the LLC agreement states otherwise, managers of a LLC are subject to the default fiduciary duties typical of corporate directors. *Maric Healthcare, LLC v. Guerrero*, 2024 WL 2993336, at *5 (Del. Ch. June 14, 2024). Here, Plaintiffs ignore the express terms of the SkyBridge II LLCA, which modify the scope of the managers' fiduciary duties and expressly limit liabilities. *See Feldman v. AS Roma SPV GP, LLC*, 2021 WL 3087042, at *6 (Del. Ch. July 22, 2021) (a LLC agreement "can modify or eliminate common law fiduciary duties"). Plaintiffs fail to plausibly plead any breach of fiduciary duty by Scaramucci or Messing regarding their alleged

compensation decisions or purported actions in connection with the sale of the Purchased Cryptocurrency.

### 1. The Complaint Fails to Plausibly Plead Any Breach of Fiduciary Duty With Respect to Compensation Decisions

Plaintiffs' breach of fiduciary duty claims premised on allegedly excessive and unfair compensation decisions by Scaramucci and Messing fall short of asserting any breach of fiduciary duty because they offer only conclusory allegations.  The Complaint is entirely devoid of allegations as to the amount Scaramucci and Messing received in compensation, the process by which such compensation was determined, or any explanation as to how Scaramucci and Messing's actions with respect to purportedly "excessive" compensation give rise to a breach of fiduciary duty.  *See Erisman v. Zaitsev*, 2021 WL 6134034, at *8, 15 (Del. Ch. Dec. 29, 2021) (dismissing breach of contract and breach of fiduciary duty claims premised on excessive compensation where the plaintiffs failed to plead facts regarding the amounts of the individual defendant's compensation).  All Plaintiffs allege is the *total amount* of compensation and benefits paid by SkyBridge II in 2023; the Complaint does not specify who received that compensation, nor does it offer a method for estimating the amount received by Scaramucci or Messing.  Compl. ¶ 105; *see Nelson v. Emerson*, 2008 WL 1961150, at *9-10 (Del. Ch. May 6, 2008) (dismissing breach of fiduciary duty claim that fell "woefully short" absent facts pleading "what compensation the [individual defendants] received and when, much less any that support an inference that the non-pled amounts exceeded what was rational and proper").

Nor do Plaintiffs explain what the purportedly "unfair" process for determining compensation is, let alone how it was unfair to SkyBridge II or Island Bay.  Island Bay agreed to vest the board of managers with discretion to determine compensation in agreeing to the terms of the SkyBridge II LLCA.  Ex. D, SkyBridge II LLCA § 3.03(j).  Plaintiffs cannot assert breach of

fiduciary duty claims premised on Scaramucci and Messing's compensation decisions when they are expressly granted discretion to make such decisions. *See White v. Panic*, 783 A.2d 543, 553 (Del. 2001) (a board has "broad discretion to set executive compensation"). Accordingly, Plaintiffs' threadbare allegations with respect to compensation do not create a plausible claim that Scaramucci or Messing breached their fiduciary duties.

### 2. The Complaint Fails to Plausibly Plead Any Breach of Fiduciary Duty With Respect to the Sale of Cryptocurrency

Plaintiffs' breach of fiduciary duty claims arising from Scaramucci and Messing's alleged actions with respect to SkyBridge II's sale of cryptocurrency tokens should be dismissed as duplicative of the breach of contract claim. As with Plaintiffs' breach of contract claims, Plaintiffs contend that Scaramucci and Messing breached their fiduciary duties by selling the Purchased Cryptocurrency without Island Bay's consent, in violation of the SkyBridge II LLCA. Compl. ¶ 149.

A breach of fiduciary duty claim is "foreclosed as superfluous" when it arises out of the same facts as a breach of contract claim. *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010); *see also CIM Urban Lending GP, LLC v. Cantor Commer. Real Estate Sponsor, L.P.*, 2016 WL 768904, at *3 (Del. Ch. Feb. 26, 2016) (dismissing breach of fiduciary duty claim that was "duplicative of [the plaintiffs'] contract claim").

Plaintiffs purport to assert breach of contract and breach of fiduciary duty claims premised on the same factual assertions—that SkyBridge II sold the Purchased Cryptocurrency without Island Bay's consent, as required under the SkyBridge II LLCA. Compl. ¶¶ 142–45, 149. As both the breach of contract and breach of fiduciary duty claims arise from the same alleged breach of the SkyBridge II LLCA, the breach of fiduciary duty claims are "foreclosed as superfluous." *See Nemec*, 991 A.2d at 1129; *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2015 WL

394011, at *8 (Del. Ch. Jan. 29, 2015) (dismissing breach of fiduciary duty claims when purported breaches corresponded to specific sections of LLC agreement).  Accordingly, Plaintiffs' breach of fiduciary duty claims arising from the sale of the Purchased Cryptocurrency should be dismissed.

To the extent the Complaint can be read as asserting Scaramucci and Messing had an independent fiduciary duty to honor, or to cause SkyBridge II to honor, the contractual agreement not to sell the Purchased Cryptocurrencies without Island Bay's consent, that argument is foreclosed by settled law that there is no independent fiduciary duty to comply with a contractual obligation in a LLC agreement.  *See Renco Grp., Inc*., 2015 WL 394011, at *8 (no fiduciary obligation existed when plaintiff failed to identify any independent duty beyond LLC provision at issue obligating defendant to share certain information); *see also Fletcher Int'l, Ltd. v. ION Geophysical Corp*., 2010 WL 2173838, at *7 (Del. Ch. May 28, 2010) (holding that the rights of preferred shareholders, which are primarily contractual in nature, generally do not give rise to separate fiduciary duties).

Moreover, as with the breach of contract claims, Scaramucci and Messing are exculpated from liability for breach of fiduciary duty because any actions with respect to the tokens were in good faith and in the best interest SkyBridge II.  *See* Ex. D, SkyBridge II LLCA § 3.08(a); *see also supra* Section III.B (explaining that the sale of FTT and Serum was in the best interests of SkyBridge and Island Bay).

## V.   PLAINTIFFS FAIL TO PLAUSIBLY PLEAD AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (COUNT 9)

To prove a claim for aiding and abetting liability, Plaintiffs must show (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach.  *In re Mindbody, Inc., Stockholder Litig*., 2024 WL 4926910, at *31 (Del. 2024).  Plaintiffs assert a claim against

Scaramucci and Messing for purportedly aiding and abetting a breach of fiduciary duty Bankman-Fried owed to Island Bay arising from their actions in connection with the SkyBridge Acquisition. Compl. ¶¶ 152-56. Plaintiffs' aiding and abetting breach of fiduciary duty claims fail as a matter of law because the Complaint fails to plausibly plead: (1) that Bankman-Fried owed any fiduciary duty to Island Bay; and (2) a knowing participation in any such breach by Messing or Scaramucci.

### A.    Plaintiffs Fail to Allege Bankman-Fried Owed Island Bay Any Fiduciary Duties

To state an aiding and abetting claim, Plaintiffs must show the existence of a fiduciary relationship. *In re Mindbody, Inc., Stockholder Litig.*, 2024 WL 4926910, at *31. While Plaintiffs assert that Bankman-Fried owed Island Bay fiduciary duties, they fail to allege facts regarding the source of any such fiduciary duty—*i.e.*, that Bankman-Fried was an officer or director of Island Bay. *See* Compl. ¶ 153. Accordingly, Plaintiffs' aiding and abetting claim fails as a matter of law and should be dismissed. *See Malone v. Brincat*, 1997 WL 697940, at *3 (Del. Ch. Oct. 30, 1997) ("If there exists no underlying fiduciary duty . . . there can be no derivative claim for aiding and abetting."); *see also Ryan v. Buckeye Partners, L.P.*, 2022 WL 389827, at *14 (Del. Ch. Feb. 9, 2022) (dismissing aiding and abetting claim "[s]ince there is no predicate fiduciary duty").

Moreover, even if the Complaint asserted that Bankman-Fried owed fiduciary duties to Island Bay as an officer or director, Island Bay's alleged corporate structure—a wholly owned subsidiary of Paper Bird, Inc., a Delaware entity, which in turn was wholly owned by Bankman-Fried—would preclude any finding that he owed a fiduciary duty to Island Bay under Delaware law because it would create a circular duty where Bankman-Fried owed a duty to himself. *See* Compl. ¶ 26.

Delaware law is clear that "fiduciary duties owed by directors of wholly owned subsidiaries run only to the parent." *See Hamilton Partners, Ltd. P'ship v. Englard*, 11 A.3d 1180, 1208 (Del.

Ch. 2010). "[T]he directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders." *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *see also Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 184 (Del. Ch. 2014) (when a corporation is wholly owned "[t]he fiduciary duties of the directors and officers require that the subsidiary be managed for the benefit of the controller"). The relationship does not go both ways; "a parent does not owe a fiduciary duty to its wholly owned subsidiary." *Anadarko*, 545 A.2d at 1174.

Accordingly, even assuming that Bankman-Fried is an officer or director of Island Bay, Delaware law forecloses that Bankman-Fried would owe any fiduciary duty to a wholly owned subsidiary like Island Bay. Rather, any fiduciary duty Bankman-Fried owed as an officer or director of Island Bay would run directly to Island Bay's parent company, Paper Bird, Inc., which is wholly owned by Bankman-Fried. Bankman-Fried cannot owe fiduciary duties to himself or his wholly owned entities, nor can he breach any such duties. Accordingly, the Complaint fails to allege (nor can it) that Bankman-Fried owed a fiduciary duty to Island Bay or any other entity in connection with the SkyBridge Acquisition.

### B. Plaintiffs Fail to Allege That Scaramucci and Messing Knowingly Participated Any Breach

Knowing participation in a breach of fiduciary duty "is often the most difficult to prove and involves two distinct concepts that are sometimes analyzed separately: knowledge and participation." *In re Mindbody, Inc., Stockholder Litig.*, 2024 WL 4926910, at *31 (Del. 2024). The knowledge element of knowing participation requires proof the defendant acted with scienter. *See id.* at *32. In other words, "the defendant must know wrongdoing is afoot and exploit it." *Jacobs v. Meghji*, 2020 WL 5951410, at *1 (Del. Ch. Oct. 8, 2020). "[P]articipation in an aiding and abetting claim requires that the aider and abettor provide 'substantial assistance' to the primary

violator." *In re Mindbody, Inc., Stockholder Litig.*, 2024 WL 4926910, at *33.  Plaintiffs have not pled facts which support either element here.

The knowledge factor examines whether the defendant "acted with the knowledge that the conduct advocated or assisted" constituted a breach of the primary actor's fiduciary duty.  *See id.* at *32 (quotations omitted).  The scienter requirement for aiding and abetting is "among the most difficult to plead," and courts routinely reject aiding-and-abetting claims premised on merely "being a counterparty to a transaction with a fiduciary."  *77 Charters, Inc. v. Gould*, 2020 WL 2520272, at *21 (Del. Ch. May 18, 2020) (citation omitted).  Plaintiffs have not pled facts showing that Scaramucci and Messing were anything more than counterparties to the SkyBridge Acquisition, which falls short of alleging the requisite scienter.  "Consistent with longstanding principles of law and capitalism, [Defendants] exercised [their] right to secure for [themselves] a 'sweet' deal."  *Jacobs*, 2020 WL 5951410, at *13.  Accordingly, Plaintiffs fail to plead that Scaramucci or Messing (who were not FTX Insiders) knew or should have known the SkyBridge Acquisition would cause Bankman-Fried to breach any fiduciary duties he owed.

To the contrary, any such assertion of scienter is belied by the plain text of the Subscription Agreement.  Bankman-Fried represented and warranted on behalf of Island Bay that the █████ ████████████████████████████ of the SkyBridge II LLCA ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ Ex. C, Subscription Agreement § 3.1(c). Accordingly, the plain terms of the Subscription Agreement demonstrate that Scaramucci and Messing were only willing to consummate the deal upon Bankman-Fried's representation and warranty that the SkyBridge Acquisition would not result in any breach or violation of a fiduciary duty owed under Island Bay's organizational documents.

The Complaint also fails for the simple reason that the original counterparty in the SkyBridge Acquisition was Clifton Bay, not Island Bay.  According to the Complaint, Clifton Bay initially signed the governing documents and paid the purchase price.  Compl. ¶ 78.  It is these actions that purportedly breached Bankman-Fried's fiduciary duties, but that would be a breach owed to Clifton Bay, not Island Bay.  After the transaction closed – in other words, after the purported breach occurred – Island Bay replaced Clifton Bay as the party to the SkyBridge LLCAs. *Id*.  The Complaint does not explain how Scaramucci and Messing could have knowingly participated and conspired *ex post facto* in breach of a fiduciary duty against Island Bay.

Moreover, the Complaint contains no factual allegations to support that Scaramucci and/or Messing substantially assisted any breach of fiduciary duty.  Delaware law offers "general protection" from a finding of substantial assistance between transactional counterparties, as is the case here.  *See In re Mindbody, Inc., Stockholder Litig.*, 2024 WL 4926910, at *41.  Courts are extremely reluctant to find that transactional counterparties assisted in an underlying breach of fiduciary duty.  *See id*. at *39 ("[W]e have never held a third-party arms'-length buyer liable for aiding and abetting a fiduciary breach.").

Nothing in the Complaint supports overcoming that reluctance here with respect to Scaramucci and Messing's alleged actions in connection with the SkyBridge Acquisition.  The Complaint contains only conclusory assertions that cannot support any inference that Scaramucci and Messing "participated in the [fiduciary's] decisions, conspired with [the fiduciary], or otherwise caused the [fiduciary] to make the decisions at issue." *Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001).  To the contrary, the plain terms of the representations and warranties in the Subscription Agreement support that the transaction was structured to ensure that the SkyBridge Acquisition did not result in any breach of fiduciary duties to Island Bay.  Accordingly,

Plaintiffs fail to sufficiently allege that Scaramucci and Messing substantially assisted in any breach by Bankman-Fried.

## VI.   PLAINTIFFS FAIL TO PLAUSIBLY PLEAD CONSTRUCTIVE FRAUDULENT TRANSFER (COUNTS 3-4)

Plaintiffs assert claims for constructive fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B), 544(b) and Delaware Code Title 6 §§ 1304(a)(2), 1305.[20]  To state a claim for constructive fraudulent transfer, Plaintiffs must adequately plead two elements: (1) insolvency; and (2) no reasonably equivalent value in the transaction. 11 U.S.C. § 548(a)(1)(B).  Plaintiffs fail to satisfy either element and the constructive fraudulent transfer claims must be dismissed.

### A.   The Complaint Fails to Adequately Allege No Reasonably Equivalent Value for the SkyBridge Transactions

Plaintiffs have not (and cannot) meet their burden of pleading a lack of reasonably equivalent value for the SkyBridge Transactions.  "Reasonably equivalent value" exists so long as the transferring party receives "roughly the value it gave." *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007).  Reasonably equivalent value is a "common sense" inquiry that requires a court to analyze the totality of the circumstances and "does not demand a precise dollar-for-dollar exchange." *In re F-Squared Inv. Mgmt., LLC*, 633 B.R. 663, 670 (Bankr. D. Del. 2021). Plaintiffs fail to sufficiently plead that they did not receive reasonably equivalent value for the transfers in connection with the SALT Sponsorship, SCF Investment, or the SkyBridge Acquisition.

---

[20] To the extent Plaintiffs are bringing their state law fraudulent transfer claims as standalone causes of action and not through § 544(b), such claims are preempted by the federal bankruptcy code.  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016); *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1204–05 (9th Cir.), *cert. denied*, 546 U.S. 927 (2005).

###### 1.    *Plaintiffs Do Not Adequately Plead a Lack of Reasonably Equivalent Value for the SkyBridge Acquisition*

The Complaint's allegations and the plain terms of the agreements cited in support confirm that Island Bay received reasonably equivalent value for the SkyBridge Acquisition because its membership interests in SkyBridge include a $45 million liquidation preference backstopped by cryptocurrencies with a value of $40 million at the time they were acquired.  Compl. ¶ 75. Specifically, Sections 5.09 and 9.02 of the SkyBridge LLCAs provide that the first $45 million of any "Sales Proceeds" from a "Disposition" and any distributions in a liquidation of SkyBridge II or SkyBridge GP, as applicable, must go to Island Bay before any other members.  Ex. D, SkyBridge II LLCA §§ 5.09, 9.02; Ex. E, SkyBridge GP LLCA §§ 5.09, 9.02.  Because SkyBridge II is required to hold on its balance sheet a basket of cryptocurrencies (worth approximately $154 million at current prices), any "Disposition" or liquidation should always result in proceeds sufficient to cover nearly all of Island Bay's investment (even assuming zero value for SkyBridge II's other assets, namely its management fees).  *See* Ex. D, SkyBridge II LLCA § 3.11.  Plaintiffs ignore this critical feature and other valuable consideration Island Bay received in exchange for its investment.  *See supra* at 11-12 (explaining unique rights afforded to Island Bay under the SkyBridge LLCAs as well as other rights and protections provided to all members).

In addition, Plaintiffs characterize the SkyBridge Acquisition as a transaction where Island Bay "in effect trad[ed] $45 million in cash for a roughly $12 million interest (30% of $45 million) in cryptocurrencies."  Compl. ¶ 13.  In the same paragraph, however, Plaintiffs admit that they acquired a 30% interest "in the operating companies for Scaramucci's hedge funds, SkyBridge II and SkyBridge GP" and acknowledge SkyBridge's substantial revenue from advisory fees.  *Id.*; *see also id.* ¶ 59 ("Scaramucci has operated SkyBridge as an asset manager of a fund of funds, investing client money in the funds of other managers."); *id* ¶ 105.  Plaintiffs incorrectly do not

ascribe any value to SkyBridge's advisory fees in their valuation of the SkyBridge Acquisition.[21]
*See id.* ¶¶ 13, 59.

In addition, Plaintiffs received a potentially valuable call right for at least 55% of the SkyBridge equity.  Ex. D, SkyBridge II LLCA § 6.10; Ex. E, SkyBridge GP LLCA § 6.10.  If SkyBridge outperformed *or* if the value of the cryptocurrency held on its balance sheet increased, then the future purchase option enables Plaintiffs to purchase up to 85% of SkyBridge—a reputable firm managing over $2 billion in client assets with investors including blue chip wealth management clients and a pension fund for a Fortune 500 company—at a fixed valuation.  *See* Katherine Burton & Francesca Maglione, *Scaramucci's SkyBridge Capital Was Spiraling, and Then Came FTX,* BLOOMBERG BUSINESSWEEK (Apr. 6, 2023), https://www.bloomberg.com/news/features/2023-04-06/anthony-scaramucci-s-skybridge-capital-woes-predate-ftx?srnd=premium&sref=MTy2GeXk (cited in Compl. ¶ 60 n.9).  Such terms reveal a transaction structure designed to maximize value for Island Bay while minimizing risk.  Put simply, even based on the facts alleged in the Complaint and the terms of the documents cited in the Complaint, the Court can conclude that Plaintiffs agreed to the SkyBridge Acquisition because it provided them with reasonably equivalent value.

Indeed, Island Bay's investment has proven profitable: putting aside that SkyBridge's revenues have almost doubled from 2023 to 2024, the $20 million of Bitcoin and Solana that SkyBridge purchased in connection with Island Bay's investment are now worth approximately

---

[21] Further, Plaintiffs' statement that "[e]ven though the SkyBridge Acquisition gave Island Bay only a 30% interest in SkyBridge, the capital contribution that Island Bay made immediately represented over 92% of the assets that SkyBridge II had to its name" is a natural consequence of the deal structure.  Compl. ¶ 84. Skybridge, like most investment management firms, does not hold material assets on its balance sheet given that the asset management fees SkyBridge earns are not recorded as balance sheet assets.  The purpose of SkyBridge holding the cryptocurrency on its balance sheet is simply to support Plaintiffs' liquidation preference.

$154 million. *Supra* at 15 n.12. Accordingly, Plaintiffs' 30% stake in SkyBridge is worth more than what they paid for it (at least $46.2 million) based on the cryptocurrency alone. This significant increase in cryptocurrency prices further demonstrates that SkyBridge, an asset manager focused on cryptocurrency, is more valuable now than it was in 2022. *See* Compl. ¶ 61 (alleging that "at least 33% of SkyBridge's assets were invested in digital assets," including "crypto tokens" and "investments in the private and public equities of digital asset companies"); *id.* ¶ 14 (the "crypto winter" started mid-2022). While reasonable equivalent value is tested at the time of the transaction, the value of the SkyBridge Acquisition today supports that it was a commercially reasonable, arm's length transaction.

### 2.   *Plaintiffs Fail to Adequately Plead No Reasonably Equivalent Value for the SALT Sponsorship or SCF Investment*

Plaintiffs allege no facts in support of their conclusory claim that they did not receive reasonably equivalent value for the SALT Sponsorship. Nor can they. The SALT Sponsorship fit FTX Trading's business and target audience as it gave it access to conferences for asset managers and technology entrepreneurs, including many other players in the cryptocurrency industry. The Complaint does not allege, nor can it, that the SALT conferences were sham transactions or that they did not deliver exactly what was promised. Indeed, the Complaint contains no allegations as to why or how FTX Trading did not receive equivalent value under the SALT Sponsor Agreement, wrongly placing the burden on Defendants to demonstrate equivalent value. *See In re Plassein Int'l Corp.*, 428 B.R. 64, 67 (D. Del. 2010) ("To establish a constructively fraudulent transfer under Delaware law, the plaintiff must show by a preponderance of the evidence that . . . the debtor made the transfer without receiving reasonably equivalent value."),

Similarly, Plaintiffs fail to plead that they did not receive roughly $10 million in value from their $10 million SCF Investment. Indeed, the Complaint is completely devoid of *any* valuation

of those assets at the time of the transaction (or currently) and, consequently, the Complaint fails to meet even the generous pleading standard on a motion to dismiss. The sole allegation in the Complaint concerning lack of reasonably equivalent value for the SCF Investment is that "[e]mployees at the FTX Group noted internally at the time that it made no economic sense" to invest in a third-party manager less experienced in the cryptocurrency asset trading business. Compl. ¶¶ 11, 67. Even assuming that SkyBridge's principals were less experienced than Clifton Bay in the field, that fact, in and of itself, does not establish a lack of reasonably equivalent value. Again, Plaintiffs' wholesale omission of any valuation of the SCF Investment wrongfully puts the burden on Defendants to show Plaintiffs received reasonably equivalent value.

**B.      Plaintiffs Fail to Plead Insolvency with Respect to the Specific Transferors or the FTX Enterprise as a Whole**

Courts routinely dismiss constructive fraudulent transfer claims where the plaintiff fails to plead facts about the transferor's finances that, if proven, would establish the transferor was insolvent at the time of the purportedly fraudulent transfer. *See, e.g.*, *In re USDigital, Inc.*, 443 B.R. 22, 39 (D. Del. Bankr. 2011) (dismissing constructive fraudulent transfer claim where "Trustee has failed to provide any support to the factual allegations that [debtor] was insolvent or was rendered insolvent" at the time of the transfer). To satisfy the insolvency element, the complaint must plead facts sufficient to demonstrate that Plaintiffs: (a) were insolvent at the time of the transfer; (b) were rendered insolvent due to the transfer; (c) were engaged in a business for which they lacked adequate capitalization; or (d) intended to incur, or believed they would incur debts they could not repay. 11 U.S.C. § 548(a)(1)(B)(iii). Plaintiffs merely recite these statutory elements but fail to plead facts demonstrating their satisfaction with respect to the specific transferor entities or the enterprise as a whole.

### 1. **Plaintiffs Fail to Plead Insolvency with Respect to the Specific Transferors**

While this Court previously held in *Alameda Rsch. Ltd. v. Giles* that Debtors are substantively consolidated for purposes of the insolvency analysis, Defendants respectfully request that the Court reconsider that decision and instead require Plaintiffs to plead insolvency for each individual transferor (which they have not done here), for several reasons. *Alameda Rsch. Ltd. v. Giles*, 2024 WL 4562675, at *12 n.32 (Bankr. D. Del. Oct. 23, 2024).

Under the FTX Plan, the Debtors were substantively consolidated "effective as of the Effective Date" (January 3, 2025)—several years after both the SkyBridge Transactions and the petition dates in these chapter 11 cases. FTX Plan § 5.7. Substantive consolidation does not have *nunc pro tunc* effect unless the order specifically says so, which it does not here. *See In re Sunset Aviation, Inc.*, 468 B.R. 641, 646 (Bankr. D. Del.) (finding that substantive consolidation is not applied *nunc pro tunc* unless the applicable order explicitly says so); *see also In re Garden Ridge Corp.*, 338 B.R. 627, 641 (Bankr. D. Del. 2006). Moreover, the FTX Plan's substantive consolidation was only "for the purposes of effectuating and implementing the Plan" and does not expressly provide that it will apply to avoidance actions. FTX Plan § 5.7. Finally, *In re DBSI, Inc.*, 447 B.R. 243 (Bankr. D. Del. 2011) does not necessarily lead to a contrary conclusion because, in that case, the substantive consolidation ruling contained *nunc pro tunc* language which was voted on pursuant to the bankruptcy plan and parties were given an opportunity to object. Findings of Fact, Conclusions of Law and Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation, *In re DBSI, Inc.*, 447 B.R. 243 (Bankr. D. Del. 2011), ECF No. 5924 at 21, 32 (thirty-five creditors objected to the Debtors' motion to substantively consolidate and the *nunc pro tunc* ruling followed a compromise and negotiation ultimately providing for a bifurcated substantive consolidation structure of two separate groups of Debtors, rather than all of the Debtors

as a whole).  Accordingly, Plaintiffs should be required to meet their burden of showing insolvency as to the individual transferors.[22]

### 2. Plaintiffs Fail to Plead Insolvency With Respect to the FTX Enterprise as a Whole

Even if Debtors are substantively consolidated for purposes of the insolvency analysis, they did not adequately plead insolvency because they only allege facts supporting insolvency of Alameda Research Ltd.,[23] not the FTX enterprise as a whole.

Plaintiffs cite testimony and plea allocution statements in support of insolvency, which suggest that *Alameda Research Ltd.* was dependent on cash infusions of customer funds from the FTX Trading customer exchange to stay afloat, but it does not demonstrate that the entire FTX enterprise was insolvent or that the entire FTX enterprise was "dependent on constant infusions of cash from new investors to satisfy obligations owed to prior ones."  *See In re DBSI, Inc.*, 447 B.R. at 248; *see Giles*, 2024 WL 4562675, at *12 n.32 (finding that "the substantive consolidation of the Debtors' estates means that the Court can look to the aggregate solvency of the Debtors' estates at this stage of the case"); Compl. ¶¶ 107-08.  In fact, Debtors admit that certain entities within the FTX enterprise are solvent.  Decl. John J. Ray III, D.I. 24 ¶¶ 13-16 ("LedgerX is solvent," "FTX Capital Markets LLC is solvent," and each of Embed Financial Technologies Inc., Embed Clearing LLC and FTX Value Trust Company are also solvent).  Consequently, Plaintiffs fail to sufficiently allege facts proving insolvency of the Debtors' estates.  And to the extent such facts are assumed

---

[22] Further, Plaintiffs' claims to recover transfers from Defendants should fall under § 550(a)(2) of the Bankruptcy Code because, by Plaintiffs' own admissions, Plaintiffs were initial transferees. Compl. ¶¶ 68, 109.  Defendants recognize this Court's decision in *Giles* that substantive consolidation of the Debtors mooted the defendants' status in that case as subsequent transferees, but Defendants respectfully preserve their arguments to the contrary.

[23] By defining "Alameda" as "Alameda Research LLC and its affiliates" (purportedly referring to the entire FTX enterprise of over 100 entities), but using the term to refer to testimony related only to Alameda Research Ltd., Plaintiffs' use and definition of the term "Alameda" is misleading. Compl. ¶ 51.

due to the substantive consolidation of the Debtors in the FTX Plan, Defendants respectfully ask the Court to reconsider that conclusion for the reasons articulated above. *Supra* Section VI.B.1.

## VII. PLAINTIFFS FAIL TO PLAUSIBLY PLEAD ACTUAL FRAUDULENT TRANSFER (COUNTS 1-2).

Plaintiffs assert claims for actual fraudulent transfer under Bankruptcy Code §§ 548(a)(1)(A), 544(B) and Del. Code Ann. Tit. 6 § 1304(a)(1).[24]  § 548(a)(1)(A) provides for the avoidance of transfers if the debtor acted with the "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C.§ 548(a)(1)(A).  A plaintiff may establish intent in an actual fraudulent transfer case in one of two ways: (1) through direct evidence; or (2) through circumstantial evidence. *See In re SportCo Holdings, Inc.*, 2021 WL 4823513, at *14 (Bankr. D. Del. Oct. 14, 2021) ("For an actual fraudulent transfer claim to survive a motion to dismiss, the plaintiff must allege facts that, taken as true, establish direct or circumstantial evidence of intent to defraud.").

Plaintiffs' actual fraudulent transfer claims must satisfy the heightened pleading standards of Rule 9(b).  *See In re Cred Inc.*, 650 B.R. 803, 834 (Bankr. D. Del. 2023).  Rule 9(b) requires a plaintiff to "plead with particularity the 'circumstances' of the alleged fraud." *In re Our Alchemy, LLC*, 2019 WL 4447545, at *5 (Bankr. D. Del. Sept. 16, 2019) (quoting *Seville Indus. Mach. Corp.* v. *Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)); *In re SportCo Holdings, Inc.*, 2021 WL 4823513 at *4 (Bankr. D. Del. Oct. 14, 2021) (Rule 9(b) requires plaintiffs to plead the "who, what, where, when, how and why" of a fraudulent transfer claim).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

---

[24] Delaware's intentional fraudulent transfer statute has the same requirements as § 548(a)(1)(A). 6 Del. C. § 1304(a)(1).

A.      **The Complaint Contains No Direct Evidence of Fraud With Respect to the SkyBridge Transactions**

The facts alleged in the Complaint demonstrate that the SkyBridge Transactions had legitimate business purposes. *See In re Live Well Fin., Inc.*, 2023 WL 3995900, at *16-17 (Bankr. D. Del. June 13, 2023) (concluding a transaction was not in furtherance of fraud where the purpose of the transaction was to generate fees for insiders rather than to enable the debtor to continue its fraudulent scheme); *see also Giles*, 2024 WL 4562675, at *8-9 (dismissing actual fraudulent transfer claims where plaintiffs' allegations suggest purposes for the transfer at issue other than furthering a fraudulent scheme).  Clifton Bay was in the business of making cryptocurrency investments such as the SCF Investment and the SkyBridge Acquisition, and FTX Trading joined many other of its industry peers by sponsoring the SALT conferences.  *See* Global Notes, D.I. 2300, at 39-47 (listing token warrants, token receivables, and ownership interests in privately held companies belonging to Clifton Bay); Global Notes, D.I. 2301, at 51-56 (listing Clifton Bay's interests in two "Cryptocurrency Platform[s]," a "Virtual Currency Exchange," a "Cryptocurrency Company," and other crypto-related businesses).

The Complaint does not include any direct evidence linking Plaintiffs' decisions to enter into the SkyBridge Transactions with the FTX Insider's fraud notwithstanding the robust record created by the numerous investigations and criminal proceedings related to FTX, which would presumably turn up such evidence if it existed.  As this Court recently held in dismissing actual fraudulent transfer claims in *Alameda Research v. Giles*:

> Transfers made in furtherance of a larger scheme to defraud may support an inference of fraudulent intent, but only where the allegations of the complaint connect the specific transfers to the scheme.  In other words, the complaint must explain how exactly the allegedly fraudulent transfers further the fraudulent scheme.

*Giles*, 2024 WL 4562675, at *9 (dismissing fraudulent transfer claims where none of the documents related to the criminal case against FTX insiders mentioned the specific transactions at issue).  Here, none of the allegations of actual fraud in the Complaint relate to the specific transfers Plaintiffs seek to avoid—the SkyBridge Acquisition, SCF Investment, or SALT Sponsorship. Compl.  ¶¶ 70, 80.  For example, there is no evidence that the SkyBridge Acquisition was used by Bankman-Fried to defraud Alameda Research Ltd's lenders or FTX Trading's investors or customers.   Even assuming the Complaint's allegations are correct that Scaramucci only introduced Bankman-Fried to potential investors because of the SkyBridge Acquisition, Plaintiffs do not cite any facts showing that any such investors actually made an investment in the FTX Group let alone were defrauded as a result of those introductions. All the Complaint alleges is that the crown prince of Saudi Arabia made "*an offer*" to invest and that an Abu Dhabi sovereign wealth fund "e*xpressed an interest in investing in FTX*" at some indeterminate time.  Compl. ¶ 92, 94.  The Complaint provides no evidence that (a) the SkyBridge Transactions are linked to the FTX Insider's fraud or (b) more importantly, that any fraud was actually committed as a result of the SkyBridge Transactions.   At most, the Complaint alleges that Plaintiffs did not receive equivalent value from the transactions and that, at the same time, Scaramucci introduced Bankman-Fried to potential investors and had a few, limited social meetings.  It is a leap of faith to posit that the SkyBridge Transactions were intended to advance Bankman-Fried's fraudulent scheme, particularly because much of the alleged fraud occurred months, and even years, before the SkyBridge Transactions and the Complaint is devoid of direct evidence linking the fraud to these transactions. Compl. ¶ 108 (citing Ellison's plea allocution stating that the fraud took place between 2019 and 2022).

The only direct link between the SkyBridge Transactions and the fraud referenced in the criminal convictions and testimony cited by Plaintiffs is the source of the funds for the SkyBridge Acquisition and the SCF Investment. While Plaintiffs allege that the FTX Insiders used misappropriated FTX customer funds and special privileges to fund the SkyBridge Acquisition and SCF Investment, such allegations fall short of rendering either transaction avoidable. *See* Compl. ¶¶ 57, 68, 109; *In re Sharp Intern. Corp.* 403 F.3d 43, 56 (2nd Cir. 2005) (dismissing claim for actual fraudulent transfer where complaint only alleged fraud related to the manner in which debtor obtained funding to make the transfer at issue); *see also Giles*, 2024 WL 4562675, at *9 (allegations that the "FTX Insiders" used fraudulently obtained funds for the transfer at issue, "in a self-dealing, opaque manner designed to obscure [] malfeasance," were insufficient to plead fraudulent intent).

Further rebutting the allegation as to the fraudulent intent under the SkyBridge Acquisition, SkyBridge "initially proposed FTX take a 15% position in his firm, but Bankman-Fried insisted on the 30% they eventually settled on."[25] Plaintiffs' request to double their equity stake demonstrates that the purpose of the SkyBridge Acquisition was not to perpetuate a fraud but to generate legitimate business profits for Plaintiffs. An increase in Plaintiffs' equity stake—larger than what SkyBridge was looking to sell—would not further Plaintiffs' access to Scaramucci's rolodex or perpetuate Bankman-Fried's fraudulent scheme to fix the hole in FTX's balance sheet; rather, the request for greater equity demonstrates that Island Bay viewed the SkyBridge Acquisition as a positive investment opportunity.

---

[25] Alexandra Semenova, *"I Think We'll Be Right": Scaramucci Dishes on SkyBridge Deal with FTX Inked During Andrea Bocelli Concert in Italy,* YAHOO FINANCE (Sept. 15, 2022), https://finance.yahoo.com/news/scaramucci-skybridge-ftx-investment-124735255.html (cited in Compl. ¶ 13 n.7).

And the SCF Investment could not have been a fraudulent scheme by any FTX Insider because, according to Plaintiffs, no FTX Insider reached out to SkyBridge to propose the SCF Investment or facilitated the SCF Investment with SkyBridge. Compl. ¶ 67. "On March 30, 2022, Scaramucci reached out to *Debtor employees*, requesting an investment in the SkyBridge Coin Fund" and Scaramucci coordinated the SCF Investment with such FTX Group employees, including the head of FTX Ventures and FTX's head of product, none of whom are the convicted FTX Insiders. *Id.* (emphasis added).

### B.   The Badges of Actual Fraud, Which Are Needed To Plead Circumstantial Evidence, Are Not Met for the SkyBridge Transactions

Plaintiffs' attempt to plead circumstantial evidence of fraudulent intent through allegations of "badges of fraud" is similarly unavailing.

The "badges of fraud" that courts often consider for circumstantial evidence include: (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction. *See In re Pennysaver USA Publ'g, LLC*, 587 B.R. 445, 460 (Bankr. D. Del. 2018). The presence of any single badge of fraud is not conclusive and courts typically require the confluence of multiple badges to establish fraudulent intent. *Id.* Beyond conclusory statements, Plaintiffs fail to allege sufficient facts to establish the existence of any of these badges of fraud. *See* Compl. ¶ 111.

#### 1.   The Relationship Between Plaintiffs and the SkyBridge Transferees

The arm's-length relationship between Plaintiffs and the SkyBridge transferees do not support any inference of fraud.

The relationship badge of fraud considers whether the transferee was an "insider" of the debtor within the meaning of 11 U.S. C. § 101(31), which includes a director, officer, control person, manager, general partner of the debtor entity, relative and affiliate. 11 U.S.C. § 101(31). Nothing in the Complaint alleges or supports that Scaramucci or Messing was an "insider" of Plaintiffs. *See In re Vaso Active Pharms., Inc.*, 2012 WL 4793241, at *10-11 (Bankr. D. Del. Oct. 9, 2012) (inquiring as to whether "the transfer in question was made to an insider" under the Bankruptcy Code or a "non-statutory insider" for purposes of this badge of fraud).

Moreover, the Complaint fails to plead facts supporting that Scaramucci's or Messing's relationship with Bankman-Fried was uncommonly close or unique in their line of work, particularly where Scaramucci and Messing had only known Bankman-Fried for a year and a half at the time of the SkyBridge Acquisition. Compl. ¶¶ 10, 63. Indeed, outside of the execution of the SkyBridge Transactions, Plaintiffs cite only a handful of meetings and communications between Bankman-Fried and Scaramucci and only one e-mail communication between Messing and Bankman-Fried. *See id*. ¶¶ 63, 71. Such minimal contact is insufficient to establish a close relationship for purposes of the badges of fraud. *See In re Vaso Active Pharms., Inc.*, 2012 WL 4793241, at *18 (Bankr. D. Del. Oct. 9, 2012).

### 2.    The Consideration for the SkyBridge Transactions Was Fair

The consideration for each of the SkyBridge Transactions was fair and there are no nonconclusory allegations in the Complaint to suggest otherwise. *See supra* Section VI.A.

### 3.    Plaintiffs Were Not Insolvent at the Time of the SkyBridge Transactions

As discussed above, Plaintiffs have not plead insolvency with respect to the specific transferors at issue or the FTX enterprise as a whole at the time of entry into any of the SkyBridge Transactions. *See supra* Section VI.B.

### 4. *The SkyBridge Transfers Are a Small Portion of the Debtors' Estate*

The amounts of the transfers underlying the SkyBridge Transactions—$45 million for the SkyBridge Acquisition, $10 million for the SCF Investment, and $12 million for the SALT Sponsorship—pale in comparison to the Debtors' assets, estimated to be over approximately $19 billion as of the petition date. *See* Decl. John J. Ray III, D.I. 24, ¶¶ 18, 23, 28, 36.

### 5. *Plaintiffs Did Not Retain Control or Dominion Over the Funds Transferred*

Plaintiffs do not and cannot allege that they retained control or dominion over the funds transferred. Indeed, with respect to the SkyBridge Acquisition, Plaintiffs concede this point. *See* Compl. ¶ 18 ("the Debtor money that Bankman-Fried provided Scaramucci and SkyBridge came with virtually no control rights"). Further, Plaintiffs had no control over the SCF Investment, which was a passive investment, and the rights provided to FTX Trading as a sponsor of the SALT conferences and were subject to various SALT approval rights. *See* Ex. A, SALT Sponsor Agreement at 1-2. Accordingly, Plaintiffs assert no facts demonstrating that they retained control over any of the property transferred in connection with the SkyBridge Transactions.

### 6. *None of the SkyBridge Transactions, Nor Bankman-Fried's Relationship With Skybridge, Were Concealed*

Lastly, none of the SkyBridge Transactions, nor Bankman-Fried's relationship with Skybridge, were concealed. Indeed, this is evident on the face of the Complaint, which cites a barrage of news articles and FTX employee statements, certain of which are dated close in time to the consummation of the SCF Investment and SkyBridge Acquisition. *See, e.g.*, Compl. ¶¶ 13 n.7; 71 n.10; 79 n.12.

Accordingly, Plaintiffs cannot rely on the "badges" of fraud to support their claims for actual fraudulent conveyance.

## VIII.   PLAINTIFFS FAIL TO PLAUSIBLY PLEAD UNJUST ENRICHMENT (COUNTS 5-6).

Unjust enrichment "is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Jacobs*, 2020 WL 5951410, at *13 (citing *Nemec v. Shrader,* 991 A.2d 1120, 1130 (Del. 2010)). Under Delaware law, the elements of unjust enrichment are "(1) an enrichment, (2) an impoverishment, (3) a relationship between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec*, 991 A.2d at 1130.  Plaintiff must plead every element in order to sustain a claim for unjust enrichment. *Jacobs,* 2020 WL 5951410, at *13.

Plaintiffs assert two purported bases for unjust enrichment: (1) alternative grounds for fraudulent transfer under 11 U.S.C. § 105(a); and (2) to recover in equity for the amount SkyBridge II has been enriched by the appreciation in value and/or proceeds of trades it conducted with the sale of cryptocurrency in violation of the SkyBridge II LLCA.  Compl. ¶¶ 133-139.  Plaintiffs' unjust enrichment claims fail for several reasons.

*First*, Plaintiffs purport to assert a claim for unjust enrichment under 11 U.S.C. § 105(a) as an alternative to fraudulent transfer, but §105 does not create a standalone right of action for unjust enrichment.   §105(a) "supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code," but it "has a limited scope." *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000).  "It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code." *Id.* (citation omitted).  "To add private causes of action to § 105(a)'s arsenal of remedies, [the court] would have to conclude that such was the intent of Congress." *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005).

Courts have prohibited unjust enrichment claims pursuant to § 105 on grounds of preemption where the Bankruptcy Code either: (i) bars a remedy on the same facts or (ii) provides a remedy for a violation of Bankruptcy Code.  *See*, *e.g.*, *In re Hechinger Inv. Co. of Del., Inc.*, 274 B.R. 71, 98 (D. Del. 2002) ("the Committee's unjust enrichment claim is preempted by section 546(e) of the Bankruptcy Code."); *Whyte v. Barclays Bank PLC*, 494 B.R. 196, 201 (S.D.N.Y. 2013) ("the section 546(g) 'safe harbor' impliedly preempts state-law fraudulent conveyance actions seeking to avoid "swap transactions" as defined by the Code."); *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009) ("Allowing recovery on these claims would render the § 546(e) exemption meaningless, and would wholly frustrate the purpose behind that section.").  Likewise, unjust enrichment claims asserted for violations of the Bankruptcy Code itself cannot be asserted under § 105.  *See*, *e.g.*, *Bessette v. AVCO Financial Services Inc.*, 230 F.3d 439, 447 (1st Cir. 2000) (alternative unjust enrichment remedy was not available under § 105 when not otherwise authorized under the Bankruptcy Code).  Plaintiffs' attempt to assert a standalone right of action for unjust enrichment under § 105(a) of the Bankruptcy Code is unavailing.

*Second*, Plaintiffs have an adequate remedy because the SkyBridge Transactions are governed by contract.  "Courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract."  *Enzolytics, Inc. v. Empire Stock Transfer Inc.*, 2023 WL 2543952, at *5 (Del. Ch. Mar. 16, 2023).  A plaintiff "cannot seek recovery under an unjust enrichment theory if a contract is the measure of the party's right."  *Id.* (quotations omitted).  Consequently, if the "alleged enrichment is governed by an express written contract," the unjust enrichment claim should be dismissed.  *In re HH Liquidation, LLC*, 590 B.R. 211, 286 (Bankr. D. Del. 2018); *see also In re Integrated Health Servs.*, 303 B.R. 577, 585 (Bankr. D. Del. 2003) ("Unjust enrichment

may only be found where there is no written agreement binding the parties."). The transactions underlying Plaintiffs' unjust enrichment claims in Counts 5 and 6 are governed by the SALT Sponsor Agreement, SkyBridge LLCAs, the organizational documents of the SkyBridge Coin Fund LP and the applicable subscription agreements. Plaintiffs admitted as much in the Complaint by acknowledging that the SkyBridge Acquisition is "clearly governed by contract." Compl. ¶ 168. Similarly, the unjust enrichment claims are entirely duplicative of Plaintiffs' fraudulent transfer claims, further demonstrating that the Complaint fails to sufficiently plead the absence of an adequate remedy at law. Consequently, Plaintiffs' unjust enrichment claims are barred as a matter of law.

*Third*, Plaintiffs' unjust enrichment claims fail for the independent reason that they were not impoverished by the SkyBridge Transactions or SkyBridge II's sale of the cryptocurrency. For the same reasons the Complaint fails to plead inadequate consideration for actual fraudulent transfer and no reasonably equivalent value for constructive fraudulent transfer, Plaintiffs fail to plead that they were impoverished by the SkyBridge Transactions. *See supra* Section VI.A. With respect to the sale of cryptocurrency, Plaintiffs do not (and cannot) allege that they were impoverished by the sale because any enrichment to SkyBridge II would flow to Island Bay as a member of the Company. Moreover, any allegation that Island Bay was impoverished by the sale of FTT and SRM fails as a matter of law because SkyBridge recovered more from the sale of those tokens than their value today. Nor do Plaintiffs present any evidence that Island Bay would have bought these cryptocurrencies itself with its $45 million purchase price but for the SkyBridge Acquisition.

Finally, the Complaint fails to plead the "linchpin" of an unjust enrichment claim—the absence of justification for the defendant's alleged enrichment, which requires "some type of

wrongdoing or mistake at the time of transfer." *Jacobs,* 2020 WL 5951410, at *1; *see also In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 657 n.73 (Del. Ch. 2008). Plaintiffs fail to plead any "wrongdoing or mistake" in connection with the SkyBridge Transactions or the sale of cryptocurrency where SkyBridge II benefited from the sale of FTT and Serum in December 2022 and there are no allegations in the Complaint that Defendants received anything more than they were entitled to in the SkyBridge Transactions.

## IX.    PLAINTIFFS' PROPERTY RECOVERY AND DISALLOWANCE CLAIMS SHOULD BE DISMISSED BECAUSE THERE ARE NO AVOIDABLE TRANSFERS (COUNTS 10-12)

Count 11 of the Complaint, which seeks to recover transferred funds under 11 U.S.C. § 550(a)(1), Compl. ¶¶ 161-63, should be dismissed because Plaintiffs have failed to adequately plead that the SkyBridge Transactions may be avoided under §§ 544, 547, and 548. *See In re Majestic Star Casino, LLC*, 716 F.3d 736, 750 (3d Cir. 2013) (noting that § 550(a)(1) only permits recovery of "property whose transfer has been avoided"); *In re Allegheny Health, Educ. & Rsch. Found.*, 253 B.R. 157, 173 (Bankr. W.D. Pa. 2000) (observing that § 550(a)(1) allows recovery "if, and to the extent that, said transfer is successfully avoided").[26]

Similarly, Count 10 of the Complaint, which seeks to disallow claims pursuant to 11 U.S.C. § 502(d), should be dismissed because Plaintiffs failed to adequately plead that Defendants received transfers which are recoverable or avoidable. *See In re KB Toys Inc.*, 736 F.3d 247, 249 (3d Cir. 2013) ("Under § 502(d), a bankruptcy claim can be disallowed if the claimant receives property that is avoidable or recoverable by the bankruptcy estate."); *In re Sunset Aviation, Inc.*, 468 B.R. 641, 651–52 (Bankr. D. Del. 2011) ("Section 502(d) provides that 'the court shall

---

[26] In addition, Plaintiffs bring claims against Defendants Scaramucci and Messing under § 550(a)(1) but they fail to show that Messing and Scaramucci are initial transferees of avoidance actions or the entities for whose benefit such transfers were made.

disallow any claim of any entity from which property is recoverable under section . . . 550 . . . of this title or that is a transferee of a transfer avoidable under section[s] . . . 547, 548, 549 of this title.'").

## **CONCLUSION**

For all these reasons, Defendants respectfully request that the Court grant Defendants' *Motion to Compel Arbitration and to Dismiss and/or Stay* all claims asserted in the Complaint.


Dated: January 24, 2025            **POTTER ANDERSON & CORROON LLP**
      Wilmington, Delaware            */s/ Jeremy W. Ryan*
                                    Jeremy W. Ryan (No. 4057)
                                    Jaclyn C. Levy (No. 5631)
                                    James R. Risener III (No. 7334)
                                    1313 North Market Street, 6th Floor,
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 984-6095
                                        E-mail:  jlevy@potteranderson.com
                                                  jryan@potteranderson.com
                                                jrisener@potteranderson.com

                                  - and –

                                  **SIMPSON THACHER & BARTLETT LLP**
                                  Jonathan Youngwood (admitted *pro hac vice*)
                                  Nicholas Baker (admitted *pro hac vice*)
                                  Batoul Husain *(pro hac vice pending)*
                                  Ashley Gherlone *(pro hac vice pending)*
                                  425 Lexington Avenue
                                  New York, NY 10017
                                  Telephone: (212) 455-2000
                                  Facsimile: (212) 455-2502
                                  E-mail: jyoungwood@stblaw.com
                                             nbaker@stblaw.com
                                             batoul.husain@stblaw.com
                                             ashley.gherlone@stblaw.com

                                  *Counsel for Defendants*